J-S50024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KENNETH EUGENE SPARKS, | : | |
| | : | |
| Appellant | : | No. 171 WDA 2014 |

Appeal from the Judgment of Sentence Entered December 26, 2013,
In the Court of Common Pleas of Fayette County,
Criminal Division, at No. CP-26-CR-0000164-2013.

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN and ALLEN, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED SEPTEMBER 24, 2014**

Appellant, Kenneth Eugene Sparks, appeals from the judgment of sentence entered following his conviction of violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-113(a)(16) & (30). We affirm.

The trial court summarized the facts surrounding this incident as follows:

> On December 16, 2011, at 12:45 A.M. Pennsylvania State Trooper Keith Abels and his partner were dispatched for an incident at 56 Oliver Road in North Union Township, Fayette County, Pennsylvania. The incident involved a tenant of [Appellant's] who rented a single room and bath with separate entrance in the front portion of the home owned by [Appellant] at 56 Oliver Road.
>
> After speaking with tenant, Lillian Arnold, Trooper Abels, at or about 1:10 A.M., walked around the residence to [Appellant's]

separate entrance to talk with him relative to the incident. [Appellant] responded to the door. While talking with [Appellant] about the incident, Trooper Abels observed a strong odor of burnt marijuana emanating from the residence. Trooper Abels then inquired of [Appellant] about the strong odor. [Appellant] stated to the officer that he had just smoked marijuana with another person. Officer Abels then asked [Appellant] if he could conduct a search of the residence and the attached garage for marijuana. [Appellant] gave his permission to Officer Abels to search the residence and garage. Upon entering the garage from the kitchen area, Officer Abels noticed a sheet hanging over something along the rear wall of the garage. When the officer removed the sheet, he observed what he determined to be two marijuana plants hanging upside down. According to Trooper Abels, both plants were approximately six feet in height with the root system intact. Upon inquiry, [Appellant] made a statement to Officer Abels indicating that he did not sell marijuana and that the marijuana was for recreational use. [Appellant] also stated that he does not grow the marijuana at his residence. He stated that he grows the marijuana on a farm that he does not own. He also stated to Trooper Abels that the plants were hanging upside down for the purpose of drying the marijuana. He stated that he was the person who hung the plants to dry.

Officer Abels photographed the plants, took them into custody and transported the plants to the Uniontown Barracks of the Pennsylvania State Police. He thereafter removed the root systems from each plant with a saw, placed the plants in a sealed bag which was then entered into a secured evidence facility. Trooper Abels then prepared a request for forensic analysis. The evidence was subsequently transported to the Pennsylvania State Police Crime Laboratory in Greensburg, Pennsylvania, for analysis.

Forensic scientist Leonard McCoy conducted testing on the plants and determined that the evidence was marijuana, a Schedule I controlled substance with a weight of 1,060 grams, in excess of two pounds.

Trial Court Opinion, 5/30/14, at 2-3 (citation omitted).

Appellant was charged with possessing with the intent to manufacture a controlled substance (marijuana) and possession of a controlled substance (marijuana). Following a jury trial, Appellant was convicted of both charges. Appellant was sentenced on the conviction for manufacturing marijuana to a term of incarceration of not less than one year nor more than three years, pursuant to 18 Pa.C.S.A. § 7508,[1] and to pay costs and fines. No further penalty was imposed for the conviction of possession of marijuana. Appellant filed a timely appeal. The trial court ordered a Pa.R.A.P. 1925(b) statement, and Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

---

[1] We are mindful of the holding of the United States Supreme Court in **Alleyne v. United States**, 133 S.Ct. 2151 (U.S. 2013), that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." **Alleyne**, 133 S.Ct. at 2155. In **Commonwealth v. Watley**, 81 A.3d 108 (Pa. Super. 2013) (*en banc*), this Court recognized that many mandatory minimum statutes in Pennsylvania are no longer constitutional based on **Alleyne.** Nevertheless, we find that the holding in **Alleyne** does not affect the sentence in the present case.

In **Watley**, we concluded that the defendant's sentence under a firearm mandatory was not illegal because the facts that triggered the mandatory minimum sentence were proven and decided by the jury beyond a reasonable doubt. Such is the case here. In the case *sub judice*, the jury made a determination, beyond a reasonable doubt, that Appellant was guilty of possessing with the intent to manufacture "two pounds or more but less than 10 pounds" of marijuana, as indicated on the jury verdict slip. (The verdict slip gave the jury two options in response to the question of the weight of marijuana possessed: 1) "2 pounds or more but less than 10 pounds" or 2) "less than 2 pounds". The jury checked the first option). Jury Verdict Slip, 12/10/13, at 1. Thus, an **Alleyne** issue is not raised by the facts of this case.

Appellant presents the following issues for our review:

Issue No. 1:    Was the evidence insufficient to find the Appellant guilty beyond a reasonable doubt of the criminal charges[?]

Issue No. 2:    Did the court err by refusing to read requested jury instructions proposed by the defense?

Issue No. 3:    Did the court err by refusing [Appellant's] omnibus pretrial motion?

Appellant's Brief at 8.

When an appellant raises both a sufficiency-of-the-evidence issue and a suppression issue, we address the sufficiency of the evidence supporting the conviction first, and we do so without a diminished record:

[W]e are called upon to consider all of the testimony that was presented to the jury during the trial, *without consideration as to the admissibility of that evidence*. The question of sufficiency is not assessed upon a diminished record. Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial.

**Commonwealth v. Sanford**, 863 A.2d 428, 431–432 (Pa. 2004) (emphasis in original). Thus, we begin by addressing the sufficiency of the evidence, as "[t]he Double Jeopardy Clause bars retrial after a defendant's conviction has been overturned because of insufficient evidence." **Commonwealth v. Mullins**, 918 A.2d 82, 85 (Pa. 2007) (citations omitted).

In his first issue, Appellant argues that evidence presented at trial was insufficient to enable the trier of fact to find every element of the crimes

charged beyond a reasonable doubt. Appellant's Brief at 11. Appellant further maintains that "[i]t is clear that the jury was confused in this matter and could not have found the Appellant guilty beyond a reasonable doubt." *Id.* at 13.

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Rivera*, 983 A.2d 1211, 1220 (Pa. 2009). "It is within the province of the fact finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Kelly*, 78 A.3d 1136, 1139 (Pa. Super. 2013).

We first consider whether the evidence was sufficient to sustain Appellant's conviction for manufacture of a controlled substance under Section 780-113(a)(30). This portion of the Act provides:

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). Providing as such, the Act criminalizes the manufacture of controlled substances. "Manufacture" is further defined by the Act as follows:

"Manufacture" means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, other drug or device or the packaging or repackaging of such substance or article, or the labeling or relabeling of the commercial container of such substance or article, but does not include the activities of a practitioner who, as an incident to his administration or dispensing such substance or article in the course of his professional practice, prepares, compounds, packages or labels such substance or article. The term "manufacturer" means a person who manufactures a controlled substance, other drug or device.

35 P.S. § 780-102. The statute defines "production" to encompass the "manufacture, planting, cultivation, growing or harvesting of a controlled substance ..." *Id.* It is undisputed that, for purposes of the Act, marijuana is a controlled substance. 35 P.S. § 780–104(1)(iv). Growing a small amount of marijuana for one's personal use comes under the ambit of Section 780-113(a)(30):

The statute does not fix any requirements governing the quantity manufactured; presumably, had the Legislature contemplated a minimum quantity requirement, it would have included one. Finally, we note our Supreme Court has held that a harsher penalty for the manufacture (versus simple

possession) of marijuana is a rational deterrent to the increased production and sale of an illegal drug and the attendant social harm. ***Commonwealth v. Burnsworth***, 543 Pa. 18, 669 A.2d 883, 889 (1995).

We hold that growing even a small amount of marijuana solely for personal use constitutes the "manufacture" of a controlled substance within the meaning of, and in violation of, 35 P.S. § 780–113(a)(30).

***Commonwealth v. Van Aulen***, 952 A.2d 1183, 1185 (Pa. Super. 2008).

The crime of simple possession of narcotics prohibits:

[k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113(a)(16).

Where the contraband a person is charged with possessing is not found on the person of the defendant, the Commonwealth is required to prove constructive possession. ***Commonwealth v. Kirkland***, 831 A.2d 607, 610 (Pa. Super. 2003). "Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control." ***Id.*** "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." ***Commonwealth v. Parker***, 847 A.2d 745, 750 (Pa. Super. 2004).

Read in a light most favorable to the Commonwealth as verdict winner, the evidence established that Appellant possessed marijuana and did so for purposes of manufacturing. The record reflects that two marijuana plants, which were approximately six-feet in height and had the root systems intact, were discovered in Appellant's attached garage after Appellant had given officers permission to search his property. N.T., 12/10/13, at 10-11. The Commonwealth produced evidence that Appellant was the owner of this property, was the primary resident and the only individual present at Appellant's residence when Officer Abels questioned him. *Id.* at 54-56, 68.

Moreover, Appellant told the Officers that he had grown the plants on a farm that he did not own and had hung the plants upside down for purposes of drying the marijuana. N.T., 12/10/13, at 23, 82. Corporal Ulery provided the following testimony regarding the hanging of the plants:

> Once the plants are harvested they are always dried to a certain [sic] before they are used to be smoked, and they almost always hang them upside down. Sometimes they separate the leaves, the buds, the stems, and hang them separately. Sometimes they hang them with the entire plant, and based on the photographs I had reviewed earlier, this one here was all intact with the root system, the stem and the leaves and the buds were all intact on the plant all hanging.

*Id.* at 32. Appellant also stated that he grew and harvested the plants for "recreational use" and did not sell the marijuana.[2] *Id.* at 12.

---

[2] As previously stated, growing even a small amount of marijuana solely for personal use constitutes the "manufacture" of a controlled substance within

Thus, this evidence, if accepted as true by the jury within its province as sole finder of fact, permitted the determination that Appellant possessed the marijuana plants discovered in his garage, and possessed them with the intent to manufacture consumable marijuana. The jury made this finding. Accordingly, Appellant's sufficiency challenge fails.

Appellant next contends that the trial court erred in refusing to issue a jury instruction requested by Appellant. Appellant's Brief at 18. At the close of trial, Appellant requested that the jury be given the following instruction:

> Guilt by association is unacceptable, mere presence of one person, among a group, at the scene of contraband, is not a strong factor indicative of guilt.

*Id.* at 18. Appellant asserts that the evidence at trial established that the tenants had an apartment connected to Appellant's house, were present and were the reason that the police were called for an incident unrelated to this case. *Id.*

We review a challenge to jury instructions with the following standards in mind:

> The nature of a court's instructions to the jury is "within the discretion of the court, so long as the court accurately instructs the jury on the appropriate legal principles involved." *Commonwealth v. Kim*, 888 A.2d 847, 852 (Pa.Super.2005) (quoting *Commonwealth v. Hartey*, 424 Pa.Super. 29, 621 A.2d 1023, 1028 (1993)). This Court's main concern is "that the charge clearly, adequately, and accurately presents the law to

the meaning of, and in violation of, 35 P.S. § 780–113(a)(30). *Van Aulen*, 952 A.2d at 1185.

the jury for its consideration." ***Id.*** (quoting ***Commonwealth v. Collins***, 810 A.2d 698, 701 (Pa.Super.2002)). The jury charge must be reviewed "not in isolated portions but as a whole to ascertain whether it fairly conveys the required legal principles at issue." ***Commonwealth v. McClendon***, 874 A.2d 1223, 1232 (Pa.Super.2005).

***Commonwealth v. Willis***, 990 A.2d 773, 776 (Pa. Super. 2010). A new trial is required because of an erroneous jury instruction only if the instruction under review contained fundamental error, misled or confused the jury. ***Commonwealth v. Fletcher***, 986 A.2d 759, 792 (Pa. 2009).

We first note that a party is required to make a specific objection to a jury charge or an omission from the charge before the jury retires to deliberate. Pa.R.Crim.P. 647(B). The failure to make such specific objection will constitute waiver of the issue on appeal. ***Commonwealth v. Baker***, 963 A.2d 495, 506 (Pa. Super. 2008). "The mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge...." ***Commonwealth v. Marquez***, 980 A.2d 145, 150-151 (Pa. Super. 2009) (citing ***Commonwealth v. Pressley***, 887 A.2d 220, 225 (Pa. 2005)).

Here, Appellant has failed to cite to the record indicating that he made a specific objection to the trial court's denial of the requested charge. In fact, a review of the transcript reflects that upon conclusion of the charge, the court inquired as to whether the parties wanted to make any additions or

corrections to the charge. N.T., 12/10/13, at 132. Both parties declined. *Id.* Thus, Appellant's claim is waived under the requirements of Rule 647(B); *see Commonwealth v. Russell*, 938 A.2d 1082, 1093 (Pa. Super. 2007) (holding that, in order to preserve for appeal a challenge to a jury charge, the defendant must lodge a specific objection or exception to the jury charge itself).

However, even if Appellant made such objection, the trial court did not err in denying the requested instruction. The record reflects that Appellant's counsel stated the following in terms of the requested jury charge:

> case law indicates that guilt by association is unacceptable, mere presence of one person among group at scene of contraband not strong factor indicative of guilt.

N.T., 12/10/13, at 86. The trial court determined that the instruction was not appropriate based on the facts of the case, specifically that Appellant "wasn't in a group." *Id.*; Trial Court Opinion, 5/30/14, at 10-11.

A review of the record reflects that Appellant was the only individual present at his residence when the Officers approached him on the date in question. Further, Appellant was the only individual present at "the scene of the contraband" when the Officers discovered the marijuana plants in the garage. Additionally, testimony regarding the tenant, Lillian Arnold, consistently established that she is a tenant in a unit entirely separate from Appellant's residence (N.T., 12/10/13, at 68-69) and that she was not

present when officers entered Appellant's residence or when they discovered the marijuana plants in Appellant's garage. Thus, we agree that this requested point for charge was not appropriate given the factual pattern in this case. As such, the trial court properly denied the instruction. Appellant's second claim fails.

In his third claim, Appellant maintains that the trial court erred in denying Appellant's pretrial motion to suppress. Appellant's Brief at 20. Appellant asserts that he made incriminating statements and that these statements "were taken in violation of his constitutional rights." *Id.*

Our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (internal citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). When reviewing a suppression court's ruling, our scope of

review includes "the evidence presented both at the suppression hearing and at trial." *See Commonwealth v. Charleston*, 16 A.3d 505, 516 (Pa. Super. 2011), (quoting *Commonwealth v. Chacko*, 459 A.2d 311, 317 n.5 (Pa. 1983)).[3]

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), a suspect has a right to have an attorney present during custodial interrogation. Prior to any custodial interrogation, the police must inform a suspect of his rights under *Miranda*, including the right to have an attorney present. "[O]nce a suspect asserts his Fifth Amendment right to counsel, not only must the current interrogation cease, but he may not be approached for further interrogation until counsel has been made available to him, unless he himself initiates further conversation with police." *Commonwealth v. Keaton*, 45 A.3d 1050, 1067 (Pa. 2012).

In order to determine whether a custodial interrogation took place, we consider the following:

> A law enforcement officer must administer *Miranda* warnings prior to custodial interrogation. The standard for determining whether an encounter with the police is deemed 'custodial' or

---

[3] The Supreme Court recently held that the scope of review of a suppression court's decision is limited to the evidence produced at the suppression hearing, and not the whole record. *In the Interest of L.J.*, 79 A.3d 1073, 1076 (Pa. 2013). That case does not apply here, however, because the ruling is prospective and was decided after this case had commenced. *Id.* at 1089 (stating that the ruling applies to "all litigation commenced Commonwealth-wide after the filing of this decision.").

police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way.' 'Interrogation' is police conduct 'calculated to, expected to, or likely to evoke admission.' When a person's inculpatory statement is not made in response to custodial interrogation, the statement is classified as gratuitous, and is not subject to suppression for lack of warnings.

*Commonwealth v. Baker*, 24 A.3d 1006, 1019 (Pa. Super. 2011) (quoting

*Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999)(*en banc*) (citations omitted). An interrogation is custodial when the subject of the interrogation reasonably believes her freedom was restricted in a significant way. *Commonwealth v. Schwing*, 964 A.2d 8, 11 (Pa. Super. 2008). In other words, the circumstances of the interrogation must become "so coercive as to constitute the functional equivalent of formal arrest." *Commonwealth v. Baker*, 963 A.2d 495, 501 (Pa. Super. 2008). Relevant factors include:

the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. The fact that a police investigation has focused on a particular individual does not automatically trigger 'custody,' thus requiring *Miranda* warnings.

*Id.* at 501.

-14-

The testimony provided by Officer Partee reflects that when he and Officer Abels were speaking to Appellant, they were inside Appellant's residence, near the front door. N.T., 12/10/13, at 80-81. Officer Partee testified that the exchange was conversational and that Appellant was not under arrest, was not handcuffed and was not threatened in any way. *Id.* at 81.

Officer Abels testified that when he asked Appellant about the smell of burnt marijuana, Appellant related that he had just smoked marijuana with another person. N.T., 12/10/13, at 9. During this conversation, Appellant and the Officers were inside Appellant's residence. *Id.* at 9-10. Appellant was not handcuffed and was not placed in custody. *Id.* at 9. Officer Abels testified that he asked Appellant if he could search Appellant's residence and garage, and Appellant gave him permission. *Id.* at 10. Moreover, during Appellant's trial testimony, Appellant acknowledged that he granted the troopers permission to search his residence and garage. *Id.* at 67.

The trial court provided the following analysis in support of its decision to deny Appellant's suppression motion:

> Here, [Appellant] was never taken into custody or restrained by the police in any manner. All contact with [Appellant] by the police was conducted in the familiar surrounds of [Appellant's] home where he had been residing. When the officer smelled the odor of burnt marijuana he asked [Appellant] about it. [Appellant] related that he just smoked marijuana with another person. He was not threatened in any way and no force was used against [Appellant] in order to obtain a statement.

The officer inquired as to whether [Appellant] would consent to a search of his residence and garage for marijuana, and [Appellant] readily agreed. [Appellant] accompanied the officers as they looked through the residence and garage. When the marijuana plants were found in the garage [Appellant] told the officers that he did not sell marijuana, that it was only used for recreational purposes, that he did not grow it in his residence but grew it on a farm that he does not own, and he admitted hanging the marijuana plants upside down in his garage to dry. Although, at trial, [Appellant] denied making certain admissions to the officers, he never indicated that the officers had taken him into custody. Based upon the totality of the circumstances, the [trial court] finds that [Appellant] was not "in custody" when Trooper Abels posed questions to him regarding the marijuana. Therefore, the **_Miranda_** warnings were not required. [Appellant's] statements to the officer[s] were made voluntarily, intelligently and of his own free will and, therefore, were not subject to suppression.

Trial Court Opinion, 5/30/14, at 18-19.

We agree. The trial court's factual findings are supported by the record and the legal conclusions drawn from those facts are correct. As such, we conclude that the trial court did not err in denying Appellant's motion to suppress.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2014