**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Charles Gerald SCHWING,**
**III, Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 2008.
Filed Dec. 29, 2008.

Robert J. Chester, Gettysburg, for appellant.

Jeffrey Boyles, Assistant District Attorney, York, for Commonwealth, appellee.

BEFORE: STEVENS, LALLY–GREEN, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

¶ 1 Appellant, Charles Gerald Schwing, III, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his convictions for two counts each of involuntary deviate sexual intercourse (IDSI), indecent assault, and corruption of minors. On appeal, Appellant challenges the denial of his motion to suppress his statement to the police. We hold that a custodial interrogation does not occur when an officer advises the defendant before the interview that he is free to leave, the officer permits the defendant to leave the room unescorted to attend to personal matters, and the officer waits until after the defendant's confession to tell the defendant he is not free to leave. We further hold that Appellant's subsequent and proper waiver of his rights cured any prior, potential violation. Accordingly, we affirm.

¶ 2 On February 28, 2006, the West Manheim Police Department conducted an

---

* Former Justice specially assigned to Superior Court.

interview of the then-thirteen-year-old victim, V.R., during which she indicated that she performed oral sex on Appellant twice, and Appellant performed oral sex on her once. She also told the police that on numerous occasions, together they smoked marijuana provided by Appellant. On March 1, 2006, Chief Timothy Hippensteel called Appellant, asking him to come to the station to discuss V.R. and her mother, with whom Appellant had a sexual relationship. Appellant testified to the following:

Q. Sir, when Chief Hippensteel called you to come to the station, did he threaten you?

A. No, sir.

Q. Did he tell you come or else you are in trouble?

A. No, sir, he did not.

Q. Tell you you would be arrest[ed] if you didn't show?

A. No, sir, he did not.

Q. Asked you to come and talk to you about a couple of things?

A. Yes, sir, he did.

Q. And you went there on your own?

A. Yes.

Q. About how far away were you when you got the call?

A. About an hour away.

N.T. Suppression Hearing, 9/5/06, at 35–36.

¶ 3 At the station, Appellant was taken to the interview room, an eight-by-eight room with windows, an interview table, and chairs. The door was left open. Appellant agreed to Chief Hippensteel's request to videotape the interview and sat at the interview table. Chief Hippensteel advised Appellant he was free to leave at any time and he was not under arrest, then proceeded to conduct the interview, which

lasted an hour and twenty minutes. During this time, Appellant was permitted to go to the restroom alone and to smoke alone outside. When his father called, Appellant was permitted to call his father back, but Appellant declined. During the interview, Chief Hippensteel asked Appellant about his relationship with V.R. and V.R.'s mother. Appellant stated that he had sexual intercourse with V.R.'s mother, then admitted to "messing around" with V.R. When Chief Hippensteel asked him to elaborate, Appellant admitted to having oral sex with V.R., but emphatically denied having sexual intercourse with her. At this point, Chief Hippensteel left the room to make a phone call, after directing Appellant to stay seated. After a few minutes, Appellant left the room and asked Chief Hippensteel if he could use the restroom, which Chief Hippensteel allowed. After he finished using the restroom, Appellant returned to the interview room, but soon went outside to smoke a cigarette.

¶ 4 When Appellant returned to his seat, he asked whether he could leave to eat dinner. Chief Hippensteel refused, then left the room to speak with the District Attorney's office for approval of arrest. Upon returning to the interview room, Chief Hippensteel informed Appellant that he was under arrest. He provided Appellant with Miranda[1] warnings, after which Appellant signed a Miranda waiver form. Chief Hippensteel then reviewed Appellant's prior statements with him. The entire process lasted approximately one hour and forty-five minutes, during which time Chief Hippensteel was either the only officer present at the station, or was present with only one other officer.

¶ 5 Appellant filed an omnibus pre-trial motion, seeking to suppress the videotape of the interview. After a hearing at which

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Chief Hippensteel and Appellant testified, and after the suppression court viewed the videotape, the suppression court denied the motion. A jury convicted him of the above charges, for which he received an aggregate sentence of five to ten years' incarceration. Post-sentence motions were denied. This timely appeal followed.[2]

¶ 6 Appellant's sole claim on appeal is whether the suppression court erred in denying his omnibus pre-trial motion because the police conducted a custodial interview without having read him his *Miranda* rights. He argues that he twice asked whether he could leave, to which Chief Hippensteel responded in the negative, or simply ignored him. Appellant contends that as a person unfamiliar with police stations, he did not know he could leave at any time. He also avers that the police inappropriately misled him into believing that the victim was pregnant and that she had implicated him as the father. He concludes that his confession was coerced, resulting in the need to suppress all evidence obtained from the interview. We disagree.

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Reppert,* 814 A.2d 1196, 1200 (Pa.Super.2002) (en banc) (quotations omitted).

A law enforcement officer must administer *Miranda* warnings prior to custodial interrogation. The standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." "Interrogation" is police conduct calculated to, expected to, or likely to evoke admission. When a person's inculpatory statement is not made in response to custodial interrogation, the statement is classified as gratuitous, and is not subject to suppression for lack of warnings.

* * *

The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

The factors a court utilizes to determine, under the totality of the circum-

---

**2.** Appellant complied timely with a Pa.R.A.P. 1925(b) order.

stances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. The fact that a police investigation has focused on a particular individual does **not** automatically trigger "custody," thus requiring *Miranda* warnings.

*Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa.Super.1999) (en banc) (internal quotations, quotations, and citations omitted).

¶ 7 Instantly, Appellant makes no attempt to prove that the police verbally or physically prevented him from leaving before he confessed to performing oral sex on V.R. Therefore, his reference to Chief Hippensteel's twice admonishing him to stay in the room, which occurred after his confession, is irrelevant to resolving whether his confession was improperly coerced.

Because there is no other obvious sign of a custodial interrogation, we proceed to examine the totality of the circumstances. *See id.*

¶ 8 Our review indicates initially that Appellant's detention did not begin to approach the level of coercion necessary to constitute the equivalent of an arrest. *See id.* The evidence clearly indicates that the door to the interview room was left open, and Appellant was free either to roam about the room or even to leave the room at various times, unaccompanied by officers. Appellant admitted at the suppression hearing that Chief Hippensteel never forced him to come to the station, and that once he was at the station, Chief Hippensteel advised him of his right to leave at

any point. *See* N.T. Suppression Hearing, at 38 (responding to question, "Did Chief Hippensteel tell you on numerous occasions that you were free to leave," with, "I think that he did on one or two occasions"). In effect, Appellant claims only that he had an inner, subjective feeling that he was not free to leave, based on his inexperience with police stations and procedures. Accordingly, we find this aspect of his claim to be meritless.

¶ 9 We find more substance in his claim that the police improperly coerced him to confess by questioning him about the victim's pregnancy. In *Commonwealth v. DeJesus*, 567 Pa. 415, 787 A.2d 394 (2001), *abrogated on other grounds, Commonwealth v. Cousar*, 593 Pa. 204, 928 A.2d 1025 (2007), the Supreme Court of Pennsylvania concluded that DeJesus's "spontaneous, voluntary response" to a detective's remarks about the case were " 'reasonably likely to elicit an incriminating response' from [DeJesus], and as such, constituted the 'functional equivalent' of . . . interrogation." *Id.* at 430–31, 787 A.2d 394, 787 A.2d at 403 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). In so finding, our Supreme Court determined that it was not the detective's intent that mattered, but simply whether "the detective should have known that his comments and conduct were reasonably likely to evoke an effort on [DeJesus]'s part to defend himself and give his own version of his involvement in the crimes at issue." *Id.*

¶ 10 Instantly, a legitimate issue arises as to whether Chief Hippensteel's six questions regarding V.R.'s pregnancy were reasonably likely to provoke Appellant's response. Although Chief Hippensteel testified that he was only "driving at the truth," and that he was investigating possible sexual activity besides sexual intercourse, *see* N.T. Suppression Hearing, at 23, his intent is irrelevant. *See DeJe-*

*sus, supra.* Nonetheless, we cannot conclude that Chief Hippensteel could have anticipated Appellant would deny having sexual intercourse with V.R., yet admit to having oral sex with her in order to avoid implicating himself on the more egregious charge. While the defendant in *DeJesus* discussed his role in the crime in order to deflect the statements made about him by his co-defendants, Appellant admitted his crime voluntarily, having assumed that the lesser crime would act as a shield to the greater crime. Moreover, even if those facts in *DeJesus* would initially afford him relief, he fails to prove that Chief Hippensteel's conduct "tainted and invalidated his subsequent waiver of rights and statement." *Id.* at 433, 787 A.2d at 405. The suppression court found, "After the administration of Miranda Warnings was completed, the officer then reviewed with the Defendant his prior statements, which again were conducted and carried out upon videotaped interview." Suppression Ct. Op., filed 9/6/06, at 3. Appellant makes no argument that his eventual waiver of his *Miranda* rights was involuntary or coerced. Accepting the suppression court's findings, as we must, we would conclude that the post-*Miranda* review of his statements properly cured any error that may have occurred prior to the reading of his *Miranda* rights. *See Reppert, supra; DeJesus, supra.*

¶ 11 We conclude that the suppression court properly denied Appellant's omnibus pre-trial motion to suppress. We hold that Appellant was not subject to a custodial interrogation, and that his voluntary waiver of his rights also prevents suppression of his videotaped confession. Accordingly, we affirm.

¶ 12 Judgment of sentence affirmed.