J-S79013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS R. STEELE | : | |
| | : | |
| Appellant | : | No. 516 MDA 2018 |

Appeal from the Judgment of Sentence December 12, 2017
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000308-2012

BEFORE:  SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 24, 2019**

Dennis R. Steele ("Appellant") appeals from the judgment of sentence entered after a jury convicted him of involuntary deviate sexual intercourse ("IDSI"), sexual assault, aggravated indecent assault, and indecent assault.[1] We affirm.

This case stems from Appellant sexually assaulting his nineteen-year-old granddaughter ("the Complainant") at approximately 7:00 a.m. on February 14, 2012, by fondling her breasts, digitally penetrating her vagina, and performing oral sex on her.  N.T., 9/14/17, at 26–32.  The Complainant and her grandmother reported the incident on February 16, 2012.  *Id.* at 34, 38.  Upon returning from a truck-driving route, Appellant voluntarily went to

_____

[1] 18 Pa.C.S. §§ 3123(a)(1), 3124.1, 3125(a)(1), and 3126(a)(1), respectively.

the Pennsylvania State Police on February 20, 2012, for an interview. *Id.* at 49–50. During the interview, Appellant admitted to engaging in sexual activity with the Complainant as alleged, but he claimed it was consensual. *Id.* at 51–53, Commonwealth Exhibit 1.

Appellant was arrested on February 21, 2012, and a criminal information was filed against him on April 13, 2012. Appellant filed a motion to suppress his statement to the police, which the trial court denied following a hearing. Motion to Suppress, 7/16/12; Opinion and Order, 10/4/12.

Appellant proceeded to trial on October 17, 2013. The trial court declared a mistrial, finding manifest necessity after Appellant's counsel intentionally subverted the Rape Shield Law during cross-examination of the Complainant. N.T., 10/17/13, at 44. Appellant filed a motion to dismiss the charges on double jeopardy grounds, which the trial court denied. Motion to Dismiss, 11/26/13; Order, 1/13/14. On appeal, we affirmed the order denying Appellant's motion to dismiss. *Commonwealth v. Steele*, 120 A.2d 390, 197 MDA 2014 (Pa. Super. filed February 24, 2015).

Appellant went to trial again on September 14, 2017, and the jury convicted him of all charges. On December 12, 2017, the trial court sentenced Appellant to incarceration as follows: a term of fifty-seven months to ten years on the IDSI count and a consecutive term of one to two years on the indecent assault count. The trial court did not impose a sentence on the charges of sexual assault or aggravated indecent assault. Appellant filed a

post-sentence motion for judgment of acquittal on the IDSI conviction, which the trial court denied. Post-Sentence Motion, 12/21/17; Order, 3/12/18. This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following questions for our consideration:

> 1. Whether the evidence is insufficient to sustain the jury's guilty verdict on the charge of involuntary deviate sexual intercourse because the evidence is insufficient to show that Appellant exercised forcible compulsion which caused the complainant to have sexual intercourse with him?
>
> 2. Whether the trial court erred in denying Appellant's motion to suppress an incriminating statement that he made to an officer of the Pennsylvania State Police?

Appellant's Brief at 7 (full capitalization omitted).

Appellant's first issue assails the sufficiency of the evidence supporting his conviction of IDSI by forcible compulsion. We analyze arguments challenging the sufficiency of the evidence under the following parameters:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quoting *Commonwealth v. Emler*, 903 A.2d 1273, 1276–1277 (Pa. Super. 2006)).

To prove forcible compulsion, the Commonwealth is "required to establish beyond a reasonable doubt that Appellant used either physical force, a threat of physical force, or psychological coercion . . . ." *Commonwealth v. Brown*, 727 A.2d 541, 544 (Pa. 1999). The degree of force is relative and depends on the totality of the facts and circumstances of the particular case. *Commonwealth v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986). "[R]esistance to sexual assault is not required to sustain a conviction." *Commonwealth v. Smith*, 863 A.2d 1172, 1176 (Pa. Super. 2004). Furthermore, the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses. *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citation omitted).

According to Appellant, "there is insufficient evidence to show that Appellant used either physical force, threat of physical force or psychological coercion causing the Complainant to have sexual activity with him." Appellant's Brief at 10. Yet, Appellant quotes the trial court's analysis in support of its denial of the motion for acquittal. Appellant's Brief at 12 (citing Trial Court Supplemental Opinion, 7/2/18, at 3–4). That analysis describes the physical force Appellant used while sexually assaulting the Complainant:

> In this case, [the] Complainant testified that she repeatedly told Appellant "no" and was crying during the entire encounter. When Appellant attempted **to pull her shirt up**, she pushed it down and asking [sic] Appellant not to do it. She also testified

- 4 -

that she pulled her knees up to her chest and **Appellant had to pull them down** to straighten her body when he decided to perform oral sex on her. [The] Complainant further testified that Appellant repeatedly told her "don't fight it." She tried to keep her pants up but **Appellant overpowered her and pulled them down**. [The] Complainant testified that when Appellant finally stopped performing oral sex, she curled up and turned away from him, but **he grabbed her hand and pulled it** to his penis. She pulled it away and **Appellant grabbed it again and pulled it back**. Each of these acts indicates that Appellant indeed used physical force.

Trial Court Supplemental Opinion, 7/2/18, at 3–4 (emphasis supplied).

The Commonwealth argues that this case is similar to ***Commonwealth v. Riley***, 643 A.2d 1090 (Pa. Super. 1994), wherein:

the Court held the defendant by his actions in laying on top of [the Complainant] and pinning her with his weight, not stopping when the [Complainant] told him to stop, and frustrating her attempts to avoid being kissed when she kept moving her head from side to side, demonstrated [Appellant] exerted enough force to overcome any resistance, and that his actions thwarted her attempt to resist.

Commonwealth's Brief at 4–5. Applying ***Riley***, the Commonwealth continues:

Herein, [Appellant's] actions in pulling up the [Complainant's] shirt, even after she pulled it back down, straightening out her legs even after the [Complainant] said no while she was crying, and his statement not to resist as he was going to do it anyway, all the while she was trying to prevent him from pulling her pants down clearly establishes [Appellant] exerted enough force to overcome her resistance, and thwarted her attempt to resist sexual contact.

***Id.*** at 5.

Viewing the evidence in a light most favorable to the Commonwealth, we reject Appellant's argument that the evidence was insufficient to prove the use of forcible compulsion, both physical and psychological. On the contrary,

the evidence sufficiently established that Appellant physically and psychologically exerted enough force to overcome the Complainant's resistance. *Riley*, 643 A.2d at 1092.

The record confirms that the Complainant lived with Appellant in a loving relationship. N.T., 9/14/17, at 23. On the morning of February 14, 2012, Appellant entered the Complainant's room while she was sleeping and asked to pet her "pussy," which she assumed meant her cat. *Id.* at 26. After petting the cat, Appellant used physical force to pull up the Complainant's shirt, pull down her knees, pull down her pants, and twice grab her hand, despite her resistance, telling him "no" and asking him to stop. N.T., 9/14/17, at 26–32. Additionally, the record reveals that Appellant instructed the Complainant "not to resist because he was just going to do it anyway," and he said, "[H]e will make love to me and if I ever told anyone he would deny it." *Id.* at 28, 32. Such statements lead to a reasonable inference that Appellant would assault the Complainant again. Thus, considering the totality of the circumstances, the Complainant's testimony was sufficient to establish the use of forcible compulsion, and the jury was free to credit the Complainant's testimony over Appellant's theory of the case. *Riley*, 643 A.2d at 1091; *Castelhun*, 889 A.2d at 1232.

Despite the overwhelming evidence of forcible compulsion, Appellant asserts that the Complainant's testimony on cross-examination, *i.e.*, she froze, did not scream or try to escape, "is devoid of any statement which

clearly or adequately describes the use of force or the threat of force against her." Appellant's Brief at 14. Appellant's reliance on this testimony is disingenuous. On direct examination, the Complainant testified to the use of force. On cross-examination, the Complainant described her reaction to the assault as it was unfolding and after it ended. The fact that her responses to defense counsel's questions did not again describe the use of force is of no moment. Accordingly, we conclude that Appellant's challenge to the sufficiency of the evidence supporting his conviction of IDSI by forcible compulsion lacks merit.

In his second issue, Appellant challenges the denial of his motion to suppress the statement he gave to police. Appellant's Brief at 14. Specifically, Appellant complains that, "although the videotaped interview which took place at the Pennsylvania State Police barracks started as non-custodial, the actions of the police officer conducting the interrogation became accusatory and transitioned the interrogation to one of a custodial nature." Appellant's Brief at 15. In support of his position, Appellant refers to the trooper's position as an "authority figure," the trooper "having [Appellant] cornered in a room," the trooper's use of "interrogation techniques that he is trained in," and Appellant's belief that he was "being restricted in his freedom of movement." *Id.* at 15, 16, 17.

Our standard of review is limited to determining whether the record supports the suppression court's factual findings and whether the legal

conclusions drawn from those facts are correct. ***Commonwealth v. Williams***, 176 A.3d 298, 315 (Pa. Super. 2017) (citations omitted). Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts. ***Id.*** Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony. ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa. Super. 2013). The scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing. ***In the Interest of L.J.***, 79 A.3d 1073, 1085 (Pa. 2013).

Upon review of the parties' briefs, the certified record, and the opinion of the trial court, we conclude that Appellant's suppression challenge lacks merit. In reaching this conclusion, we adopt as our own the well-reasoned opinion and order of the trial court, wherein the Honorable President Judge Nancy L. Butts concluded that "the incriminating statements made by [Appellant] were done during a non-custodial interview with police." Trial Court Opinion and Order, 10/4/12, at 6.[2] Thus, Appellant was not entitled to suppression of his confession, and the trial court did not err in denying him relief.

Judgment of sentence affirmed.

---

[2] The parties are directed to attach a copy of the trial court's October 4, 2012 opinion and order to any future filings in this matter.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/24/2019

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

COMMONWEALTH            :

                         :

       v.              :       CR: 308-2012

                         :       CRIMINAL DIVISION

DENNIS R. STEELE,      :

      Defendant        :

## OPINION AND ORDER

The Defendant filed a Motion to Suppress Evidence on July 16, 2012. A hearing on the motion was held September 20, 2012.

### Background

On February 20, 2012, Dennis Steele (Defendant) voluntarily arrived at Pennsylvania State Police Montoursville at the request of Trooper Tyson Havens (Havens). The entire interview with the Defendant was videotaped and recorded. The Defendant was placed in a small interview room that had one (1) table, two (2) chairs, and what appeared to be a two-way mirror. The door to the interview room was propped so that it was open a few inches. The Defendant was asked whether the interview could be videotaped and he agreed. Havens told the Defendant that he was not under arrest and that he could leave at any time. Specifically, Havens stated to the Defendant:

> Just to cover a few things first, you are not under arrest, you do not have to talk to me, and you are free to leave at any time. It's important that you understand that, that if you do not want to talk to me, if--. Obviously you are here because you want to tell me your side of the story but at some point during our conversation you decide that you do not like what is going on here, nobody is keeping you here. You can walk out this door, turn right and leave the same way you came in and nobody is going to stop you.

The interview began with Havens asking the Defendant if he knew why he was at the police station. The Defendant indicated that he was accused of something with his

granddaughter and sex. Havens then continued by asking about how he knew about the accusations and generally about the alleged victim and the kind of relationship the Defendant had with her. Havens then asked about the day the alleged crime occurred, in which the Defendant did not make any incriminating statements. During the interview, Havens stated that he could tell by the way the Defendant was acting that he did something and the Defendant responded that he was "nervous" and "scared shitless." Havens then moved his chair about a foot closer to the Defendant and asked the Defendant to be honest, tell the whole story, and to seek help/forgiveness. During the entire interview Havens moved his chair slightly closer to the Defendant on three (3) separate occasions. Havens, however, never impeded the Defendant's access to the open door and he was still approximately two (2) arm lengths away from the Defendant.

Approximately fourteen (14) to fifteen (15) minutes from the start of the interview the Defendant confessed to going into the room of his granddaughter and touching and licking her breasts. The Defendant then stated that he engaged in similar behavior with his granddaughter's vagina. The Defendant made the incriminating statements as a result of Havens stating that his granddaughter would not have to take the witness stand against him if he told the truth. At twenty four (24) minutes and forty-five (45) seconds into the video, Havens stated that the Defendant would be charged for the crimes to which he had previously confessed. The entire interview lasted approximately thirty-four (34) minutes and the Defendant left the police station immediately afterwards.

On September 20, 2012, during the hearing on the Motion to Suppress Evidence, the Defendant testified regarding his confession. The Defendant stated that he believed he was in

2

custody and that he was restricted in movement. The Commonwealth argued that the circumstances of the interview and the interview itself established that it was non-custodial.

*Motion to Suppress*

The Defendant contends that the interview with Havens began as non-custodial but then became custodial and therefore the Defendant should have been advised of his rights prior to making incriminating statements. A law enforcement officer must administer Miranda warnings prior to custodial interrogation.[1] When a court determines whether a defendant is in custody they must be objective and consider whether the person being interrogated reasonably believed that his freedom of action or movement was restricted by the interrogation. Commonwealth v. Edmiston, 634 A.2d 1078, 1085-86 (Pa. 1993). The reasonable belief of the defendant is determined by the totality of the circumstances. Id.

> A person is in custody for *Miranda* purposes only when he "is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Johnson.* 727 A.2d 1089, 1100 (Pa. 1999). The U.S. Supreme Court has elaborated that, in determining whether an individual was in custody, the "ultimate inquiry is . . . is whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994).

Commonwealth v. Sherwood, 982 A.2d 483, 499 (Pa. Super. 2009). Elements that courts look at to determine whether the defendant's will has been impinged include: 1) the duration and method of interrogation; 2) the conditions of detention; 3) the manifest attitude of the police toward the defendant; 4) the defendant's physical and psychological state; and 5) all other conditions present which may serve to drain one's power of resistance to suggestion and undermine his self-determination. Commonwealth v. Watson, 360 A.2d 710, 713 (Pa. Super. 1976) (citing Commonwealth v. Alston, 317 A.2d 241, 244 (Pa. 1974).

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966) (outlining a defendant's Fifth Amendment rights).

3

In Schwing, the defendant was called by police to discuss an alleged sexual assault of a thirteen (13) year old female. Commonwealth v. Schwing, 964 A.2d 8, 10 (Pa. Super. 2008). The defendant voluntarily went to the police station and was placed in an interview room. Id. The room was eight-by-eight with windows and had an interview table, and chairs. Id. The door was left open and the defendant agreed to videotape the interview. Id. The defendant was advised that he was free to leave at any time and that he was not under arrest. Id. In addition, the defendant even left the interview room to go use the restroom and make a phone call. Id. The interview lasted one hour and twenty (20) minutes and eventually the defendant made incriminating statements. Shortly after the statements were made the Defendant asked to leave to eat dinner, in which the officer refused.

The defendant in Schwing alleged that the officer preventing him from leaving raised the interview into a custodial interrogation. The Pennsylvania Superior Court stated that police never verbally or physically prevented the defendant from leaving *prior* to him confessing to the crime. Id. at 12. In addition, the Superior Court found that the interview was not custodial because the defendant voluntarily went to the police station, the defendant was told he could leave at any point, the interview room's door was open, and the defendant in fact left the room on various occasions. Id.

Here, the Defendant voluntarily arrived at the police station and was clearly informed that he was not under arrest and that he could leave at any time. The door to the interview room was propped open and the Defendant always had a clear path to the door. The interview was relatively short lasting approximately thirty-four (34) minutes. In addition, the Defendant made incriminating statements fifteen (15) minutes from the beginning of the interview. The Defendant left the police station after the interview was conducted and was not placed in a secure

4

waiting area, was not frisked, and was not placed in handcuffs. The Defendant never asked if he could leave during the interview and was not forced or threatened to stay in the conference room.

The Court finds that the facts in this case are similar to Schwing, in which the defendant arrived at the police station, was interviewed in a small conference room, and told that he could leave the interview at any time. Further, as in Schwing, the defendant stated at a pre-trial hearing that he believed that he could not terminate the interview. Schwing, 964 A.2d 12. The Superior Court, however, ruled that because the defendant was informed that he could leave the interview at anytime there was no custodial interrogation and it was a meritless claim. Id. (stating that inexperience with police stations and procedures is meritless in showing a subjective feeling of not being able to leave). The Defendant in this case was also informed that he could leave and placed in a similar situation and therefore his testimony that his movements were restricted and that he felt as though he was in custody are also without merit.

The Court finds, under the totality of the circumstances, that the interview was not custodial. While the Defendant stated he was scared during the interview he appeared rational and composed. Further, the Defendant appeared in good physical condition and there were no apparent conditions that would drain his resistance to suggestion or undermine his self-determination. When Havens told the Defendant he was going to be charged for a crime he had by that time already made the incriminating statements. Finally, the interview was very short in duration and the conditions of the interview made it clear that the Defendant was free to leave, which the Defendant did in fact do after the close of the interview.

5

## ORDER

AND NOW, this ___3rd___ day of October, 2012, based upon the foregoing Opinion, the Court finds that the incriminating statements made by the Defendant were done during a non-custodial interview with police. Therefore, the Defendant's Motion to Suppress is hereby DENIED.

By the Court,

Nancy L. Butts, President Judge

xc:    DA (AB)
Pete Campana, Esq.
Eileen Dgien, Dep. CA
Gary Weber

6