J-S30014-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DEONTE DEQUAN BRYANT | : | |
| | : | |
| Appellant | : | No. 1649 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 9, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000163-2018

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                          FILED AUGUST 14, 2020

Deonte Dequan Bryant (Appellant) appeals from the judgment of sentence imposed following his conviction of receiving stolen properly.[1]  On appeal, Appellant challenges the trial court's denial of his suppression motion. After careful review, we affirm.

Testimony from the suppression hearing reveals that shortly after midnight, on October 8, 2017, Appellant along with three other individuals were sitting in a vehicle parked at a Country Fair convenience store parking lot in Summit Township, Pennsylvania.   Appellant was sitting in the front passenger seat.   Police Officers Kyle Sweeney (Trooper Sweeney) and Nathan

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  18 Pa.C.S.A. § 3925(a).

Hartless (Trooper Hartless) were patrolling the area in full uniform and a marked patrol car. N.T., 9/7/18, at 23.[2] The troopers approached the vehicle because of a strong odor of marijuana emanating from the car. Suppression Court Opinion, 11/5/18, at 4.

Trooper Hartless asked each of the four occupants for identification. N.T., 9/7/18, at 16. Initially, Appellant stated that he did not have identification, but eventually provided his driver's license indicating he was from Ohio. See id. at 16-17.

After receiving identification from each occupant, Trooper Sweeney asked whether anyone was armed. Id. at 23-24. Appellant responded by pointing to his chest; and consequently, Trooper Sweeney ordered Appellant from the vehicle. Id. at 24. As he removed Appellant from the vehicle, Trooper Sweeney saw Appellant kicking two handguns on the floor of the car. Id. Troopers Sweeney and Hartless handcuffed each of the four occupants and recovered the two guns. Id. at 24-25. Trooper Sweeney determined that both guns were loaded. Id. at 25. After communicating with dispatch, Trooper Sweeney learned that one of the guns was stolen. Id. at 25-26.

Trooper Sweeney testified:

> I wanted to further our investigation to determine whether [Appellant] was actually the individual that possessed these handguns because throughout the entire encounter they seemed to be deceptive to us and they were very nervous. So the only

---

[2] Troopers Sweeney and Hartless were the only witnesses who testified at the suppression hearing.

place I could talk to [Appellant] alone away from the three other occupants was at the back of our patrol vehicle, which at the time I brought [Appellant] in the back of our patrol vehicle and spoke with him.

\*       \*       \*

. . . I informed him what was going on because he was standing there in handcuffs, he seemed a little confused. I informed him that one of the firearms . . . had come back stolen out of Toledo, Ohio.

At this point in time, he stated that -- I asked him if the guns were his because I wanted to further our investigation before I determined whether he was going to be arrested or not, he stated they were his.

Id. at 25-26 (emphasis added). At this time, Trooper Sweeney informed Appellant "he was under arrest for possession of a stolen firearm[,]" and read Appellant his Miranda[3] rights. Id. at 27.

Appellant told Trooper Sweeney that he understood his rights and continued speaking with Trooper Sweeney about the stolen handgun. Id. at 29. Appellant stated that the gun did not belong to him and the gun's owner "was not on the scene at the time." Id. at 29. Trooper Sweeney testified:

After he informed me that the handguns were not his and the person who was the owner of the handguns was not on scene, he -- I asked him if he did not want to snitch on his friends and who he got them from and he refused to answer. And I ask[ed] him why he was lying to me about the handguns and he said, I don't know.

I asked him why they had handguns in the vehicle and possessed them, he said because you understand what's been going on with all the recent shooting in the city. And him and his

_____

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

- 3 -

friends in the vehicle were up here at the Metroplex for a rap concert, and they had them for protection; that's what he said.

And he informed me that he had an Ohio concealment permit, but he did not have one with him. And that's what he said in the back of the patrol unit.

Id. at 30.

Following this conversation, the troopers transported Appellant to their barracks. See id. at 35. At the barracks, Trooper Sweeney again questioned Appellant about the stolen handgun. Id. Trooper Sweeney could not recall if he re-read Appellant his Miranda rights at the barracks. Id. During this conversation, Appellant gave multiple differing accounts of how he acquired the stolen gun. He told Trooper Sweeney that he bought the handgun from a gun store, that he bought the gun from a friend, and that he bought it at a gun show.

Trooper Hartless testified about problems with the mobile video recorder (MVR) during the troopers' encounter with Appellant and his three cohorts. The trial court summarized Trooper Hartless' testimony:

. . . The MVR consists of a visual and audio recording. The visual recording was filmed by a camera mounted on the dashboard of the police vehicle. The camera was activated when the police cruiser lights were activated. The audio recording was made from a microphone mounted on the shoulder of Trooper Hartless' uniform. While the audio recording was also activated when the troopers' vehicle lights were activated, it could also be controlled by Trooper Hartless via a manual switch. Trooper Hartless was the only officer who wore a microphone that evening.

The MVR was played at the suppression hearing. The audio "cut out" briefly. Trooper Hartless testified he unintentionally momentarily paused the audio recording or turned it off when he

gestured with his hand to his shoulder to make sure the microphone was turned on. Trooper Hartless testified the microphone on his shoulder can only pick up audio a few feet from the microphone. Trooper Hartless testified that during portions of the MVR he was not always standing beside Trooper Sweeney. Trooper Harless testified his own attention was focused on the operator of the vehicle when Trooper Sweeney read [Appellant] the Miranda warnings.

Suppression Court Opinion, 11/5/18, at 5-6. Because Trooper Hartless paused the microphone, there is no audio of Trooper Sweeney reading Appellant his Miranda rights. See N.T., 9/7/18, at 33-34.

As noted, Troopers Sweeney and Hartless were the only witnesses to testify at the suppression hearing. The trial court found both troopers' testimony to be credible. Id. at 47 ("Well, I believe the trooper. Both troopers are credible here.").

The trial court summarized the procedural history that ensued:

. . . Appellant was charged with one count of [r]eceiving [s]tolen [p]roperty.

In April of 2018, Appellant filed an [o]mnibus [p]re-[t]rial [m]otion, and an evidentiary hearing was held. In July of 2018, Appellant filed an [a]mended [o]mnibus [p]re-[t]rial [m]otion, and another evidentiary hearing was held. The motions included a motion for writ of habeas corpus, and a motion to suppress Appellant's statements at the time of the traffic stop.

. . . In the suppression motion, Appellant asserted his statements to the police were made in the absence of Miranda warnings. On November 5, 2018, the [trial court] denied the motions.

Following a three-day jury trial, Appellant was convicted of [r]eceiving [s]tolen [p]roperty. On September 9, 2019, the [trial court] imposed a mitigated-range sentence of restrictive intermediate punishment for 36 months, to begin with nine

- 5 -

months of electric monitoring, followed by three months of intensive supervision.

Trial Court Opinion, 1/3/20, at 1-2.

On September 19, 2019, Appellant filed a post-sentence motion which the trial court denied on October 15, 2019. On November 6, 2019, Appellant filed a timely notice of appeal. The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On December 6, 2019, Appellant filed a Rule 1925(b) statement.

Appellant presents one issue for review:

> I. WHETHER THE [TRIAL] COURT ERRED IN DENYING [APPELLANT]'S MOTION TO SUPPRESS STATEMENTS[?]

Appellant's Brief at 4.[4]

At the outset, we recognize:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those]

---

[4] In his Rule 1925(b) statement, Appellant challenged the sufficiency of the evidence supporting his receiving stolen property conviction. Appellant has abandoned and waived this issue on appeal by failing to argue it in his brief. See Commonwealth v. Bullock, 948 A.2d 818, 823 (Pa. Super. 2008) (finding appellant waived and abandoned issue he preserved for appeal by failing to properly develop it in an appellate brief).

findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

Commonwealth v. Jones, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted). Importantly, our scope of review is limited to the evidentiary record from the suppression hearing. In re L.J., 79 A.3d 1073, 1087 (Pa. 2013).

Appellant makes three arguments in support of his suppression issue. First, Appellant asserts that he was subject to a custodial detention and interrogation when Trooper Sweeney, prior to reading him Miranda warnings, removed him from the car, handcuffed his hands behind his back, placed him in the patrol car, and questioned him about ownership of the stolen handgun. Second, Appellant contends that after Trooper Sweeney read him his Miranda rights, Appellant exercised his right to remain silent and the troopers did not honor this right when they continued to question him at the barracks. Third, Appellant claims the troopers should have re-read Appellant his Miranda rights before questioning him at the barracks.

There are three categories of interactions between police and citizens:

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

Commonwealth v. Downey, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted).

"To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave." Commonwealth v. Strickler, 757 A.2d 884, 889 (Pa. 2000). In evaluating the totality of the circumstances, our focus is whether, "by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained." Id. at 889. In making this determination, no single factor dictates "the ultimate conclusion as to whether a seizure has occurred." Id.

"An encounter becomes an arrest when, under the totality of the circumstances, a police detention becomes so coercive that it functions as an arrest." Commonwealth v. Stevenson, 894 A.2d 759, 770 (Pa. Super. 2006). Courts analyze numerous factors to determine whether a detention has become an arrest, including, "the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel suspicions." Id.

With respect to custodial interrogations, this Court has explained:

A law enforcement officer must administer Miranda warnings prior to custodial interrogation. The standard for determining

whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." "Interrogation" is police conduct calculated to, expected to, or likely to evoke admission. When a person's inculpatory statement is not made in response to custodial interrogation, the statement is classified as gratuitous, and is not subject to suppression for lack of warnings.

Commonwealth v. Schwing, 964 A.2d 8, 11 (Pa. Super. 2008) (quoting Commonwealth v. Mannion, 725 A.2d 196, 200 (Pa. Super. 1999) (en banc)).

Thus, there are two criteria of a custodial interrogation that trigger the requirement that police issue Miranda warnings. First, the defendant must be in custody, i.e., subject to the functional equivalent of an arrest. See Stevenson, 894 A.2d at 770. Second, there must be questioning by the police that is likely to evoke an incriminating response. See Schwing, 964 A.2d at 11.

Appellant asserts that his encounter with the troopers constituted a custodial detention (i.e., functional arrest) because Trooper Sweeney removed him from the vehicle, handcuffed him, and placed him in the patrol car. Appellant further asserts that his interaction with Trooper Sweeney when Appellant was in the patrol car was a custodial interrogation because Trooper Sweeney questioned him about his ownership and acquisition of the stolen handgun. Appellant maintains that this custodial interrogation was

unconstitutional because he did not receive Miranda warnings until after he said the handgun belonged to him.

After careful review of the record, we conclude that there was a Miranda violation in this case. First, Appellant was subject to a custodial detention for Miranda purposes. The record reflects that while on routine, the troopers smelled marijuana emanating from the vehicle in which Appellant was sitting, and approached the vehicle. When Trooper Hartless asked each of occupants for identification, Appellant stated that he did not have identification, but eventually provided his driver's license. N.T., 9/7/18, at 16-17.

After receiving identification from each occupant, the troopers asked whether anyone was armed. Id. at 23-24. Appellant replied in the affirmative, and pointed to his chest. Id. at 24. Trooper Sweeney then removed Appellant from the vehicle. Id. As he removed Appellant from the vehicle, Trooper Sweeney observed Appellant attempting to cover with his feet two guns that were in plain view on the floor of the vehicle. Id. After Appellant exited the vehicle, Trooper Sweeney placed Appellant in handcuffs. Id. Trooper Sweeney then learned from dispatch that one of the two firearms was stolen. Id. at 25. At this time, Trooper Sweeney placed Appellant in the back of his patrol car. Id. at 26. Without reading Appellant his Miranda rights, Trooper Sweeney asked Appellant if the stolen gun belonged to him. Id. Appellant responded that the gun did belong to him and that he bought

it from a private owner. Id. Trooper Sweeney then informed Appellant that he was under arrest and read Appellant the Miranda warnings. Id. at 27.

The record reveals that after removing Appellant from the vehicle and handcuffing him, Trooper Sweeney placed Appellant in the back of his patrol car. Thus, Appellant subject to the functional equivalent of an arrest before Trooper Sweeney began questioning him about the stolen firearm. See Commonwealth v. Sepulveda, 855 A.2d 783, 790 (Pa. 2004) ("[a]ppellant was clearly deprived of his freedom of action when [t]rooper [] handcuffed him, placed him in the back of the patrol car, and locked the door."); Commonwealth v. Turner, 772 A.2d 970, 976 (Pa. Super. 2001) (holding that the combination of placing the appellant in the police car, shutting the door, and the police officer questioning him while blocking the doorway "compel[led] the conclusion" that the appellant was subject to a custodial interrogation).

Next, we must determine whether Appellant was also subjected to a custodial interrogation. Because Trooper Sweeney asked Appellant about the ownership of the gun the trooper knew to be stolen, and how Appellant acquired the gun, Trooper Sweeney's questions likely to evoke admission to a crime. See Schwing, 964 A.2d at 11. Thus, Trooper Sweeney's questioning of Appellant regarding the stolen firearm was a custodial interrogation, and the trial court should have suppressed any statements Appellant made in the patrol car prior to receiving Miranda warnings.

Nevertheless, Appellant is not entitled to relief. We are compelled to recognize that Appellant does not argue that the troopers did not have probable cause to arrest him for being in possession of a stolen handgun. Likewise, Appellant does not challenge the troopers' decision to continue his detention or transport him to their barracks. Importantly, although Trooper Sweeney failed to advise Appellant of his Miranda rights before questioning him in the patrol car, Trooper Sweeney read Appellant Miranda warnings as soon as Appellant said that the firearms "were his" and that "he bought them from a private owner." N.T., 9/7/18, at 26.

Moreover, even without the statements Appellant made to Trooper Sweeney in the back of the patrol car, the troopers clearly had probable cause to arrest Appellant for possessing a stolen handgun. Probable cause exists "where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." Commonwealth v. Stultz, 114 A.3d 865, 883 (Pa. Super. 2015) (quotations and citations omitted).

As stated above, the trial court found the officers' testimony credible, and we are bound by this determination. See Jones, 121 A.3d 524, 526-27; see also N.T., 9/7/18, at 47. Troopers Sweeney and Hartless encountered Appellant and his three friends late at night, in a vehicle parked in a Country Fair store parking lot. The troopers initially approached the vehicle because of a strong smell of marijuana emanating from the vehicle. When the troopers

asked the vehicle's occupants for identification, Appellant stated he did not have any, but produced his driver's license several minutes later. When Trooper Sweeney asked the four individuals if anyone was armed, Appellant responded by pointing at his chest. As Trooper Sweeney removed Appellant from the vehicle, he observed Appellant trying to conceal with his feet two firearms on the floor of the car. Trooper Sweeney then learned from dispatch that one of the two handguns was stolen out of the Toledo, Ohio, the same general area listed on Appellant's driver's license. After Trooper Sweeney read Appellant his Miranda rights, Appellant continued to admit that the handgun belonged to him and gave Trooper Sweeney several different stories as to how he acquired it. Based on our review of the suppression hearing testimony, the facts and circumstances within the troopers' knowledge were sufficient to warrant a person of reasonable caution in the belief that Appellant had committed the crime of receiving stolen property.[5] See Stultz, 114 A.3d at 883.

As this Court has explained, "where an unwarned statement is not the product of police coercion, a careful and thorough administration of a defendant's Miranda rights will render any subsequent statement voluntary

_____

[5] The Pennsylvania Crimes Code defines receiving stolen property as follows: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a).

and knowing, and therefore, admissible." Interest of N.M., 222 A.3d 759, 772 (Pa. Super. 2019) (citations omitted), appeal denied, 749 MAL 2019, 2020 WL 1862072 (Pa. Apr. 14, 2020). Although a Miranda violation occurred in this case, Appellant eventually received his Miranda warnings and continued to make voluntary statements indicating that he was the owner of a stolen handgun, and other inconsistent and incriminating statements relating to how he acquired the firearm. Accordingly, the troopers had probable cause to arrest Appellant for the crime of receiving stolen property, and appropriately continued his custodial detention and interrogation at their barracks.

Appellant raises two additional arguments in support of his challenge to the trial court's denial of his suppression motion: that Appellant exercised his right to remain silent after he received his Miranda warnings and the troopers did not honor this right, and that the troopers should have re-read Appellant his Miranda rights before questioning him at the barracks. Appellant, however, did not raise these arguments in his suppression motion. See Amended Omnibus Pre-Trial Motion, 7/25/18. Thus, Appellant has waived both of these arguments. See Commonwealth v. Malloy, 856 A.2d 767, 778 (Pa. 2004) (finding an argument "waived because appellant failed to raise this particular challenge before the suppression court"); see also Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Additionally, the record developed at the

suppression hearing was devoted almost entirely to Appellant's first argument (i.e., the Miranda violation that occurred in patrol car). There is little testimony relating to the troopers' interactions with Appellant en route to and at the barracks. Accordingly, Appellant has not preserved his second and third arguments challenging the denial of his suppression motion for our review.

In sum, although Trooper Sweeney improperly conducted the initial custodial interrogation of Appellant in violation of Miranda, Trooper Sweeney had probable cause to arrest Appellant for receiving stolen property, Trooper Sweeney subsequently advised Appellant of his Miranda rights, Appellant waived those rights by voluntarily speaking with Trooper Sweeney, and Appellant made incriminating statements during that questioning. Thus, Trooper Sweeney's subsequent actions cured the initial improper custodial interrogation. See Interest of N.M., 222 A.3d at 772. Therefore, we discern no error in the trial court's denial of Appellant's suppression motion.

Judgment of sentence affirmed.

P.J.E. Stevens joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/14/2020