J-S09040-26

2026 PA Super 80

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JASON HARDING | : | |
| Appellant | : | No. 627 EDA 2025 |

Appeal from the PCRA Order Entered February 7, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001709-2020

BEFORE:  MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED APRIL 22, 2026**

Appellant, Jason Harding, appeals *pro se* from the February 7, 2025, order entered in the Court of Common Pleas of Philadelphia County dismissing his first petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545, without an evidentiary hearing.  After our careful review, we affirm.

The relevant facts and procedural history have been set forth previously, in part, by this Court as follows:

On December 21, 2018, [Appellant] and four other individuals, [including Appellant's younger brother and three friends], were filming a "rap video" near 2100 Middleton Street in Philadelphia.  N.T., Jury Trial, 9/1/21, at 70.  At approximately 10:00 p.m., the victim, Bernell Gibson, inquired as to what the group was doing on the street and requested that they leave.  ***Id.***  When [Appellant] first saw the victim approaching the group,

---

[*] Former Justice specially assigned to the Superior Court.

[Appellant] saw a light and thought the victim was holding a firearm. In response, [Appellant] removed his firearm from his pocket. Upon realizing the light [Appellant] saw was the victim's phone, [Appellant] placed his firearm under his shirt. *Id.* at 76-77; *see* Exhibit D-1.

[Appellant] testified that the victim's tone was "aggressive," *id.* at 70, and that the victim was "calling for somebody." *Id.* at 71. [Appellant] "[saw the victim's] right hand [go] down[] his body [and go] sideways [] and it looked like he went to reach for something, that's when I started shooting." *Id.* [Appellant] testified, "When I shot [the victim], I thought he was going to try to reach for a gun and start shooting at me….The first couple of shots [were] warnings shots. And then the second time I started shooting, it was [] out of fear." *Id.* at 72. [Appellant] was "probably seven feet" away from the victim during the incident, *id.*at 75, and fired a semi-automatic firearm nine times. [Detective James Poulos testified that nine .40 caliber shell casings were found at the scene, and the casings were consistent with the firing of a semi-automatic weapon. N.T., Jury Trial, 8/31/21, at 92, 110.] Detective Thorston Lucke testified [a] surveillance video,[ which the jury viewed], shows "[the victim] turn and kind of run away as he's being shot." *Id.* at 42. The parties stipulated that the victim died due to a gunshot wound to his torso. *Id.* at 117-18.

On September 7, 2019, [after Appellant was arrested at the scene of an unrelated robbery], [Appellant] was arrested and charged with murder [in connection with the death of the victim], a violation of the Uniform Firearms Act, and possessing an instrument of a crime. A preliminary hearing was held on February 30, 2021, during which [Appellant] pled not guilty to all charges. [Represented by Gary Server, Esquire, and Scott Gessner, Esquire, (collectively, "trial counsel") Appellant] proceeded to a jury trial on August 30, 2021, after which he was found guilty on third-degree murder, carrying a firearm without a license, and carrying a firearm in a public place in Philadelphia. Sentencing was deferred pending a pre-sentence investigation (PSI) report and a mental health evaluation.

On November 19, 2021, the trial court sentenced [Appellant] to an aggregate term of 22½ to 45 years' incarceration followed by 5 years of probation. [Appellant] filed a timely post-sentence motion, which was denied. [He then filed a timely, counseled direct appeal.]

***Commonwealth v. Harding***, No. 883 EDA 2022, at * 1-3 (Pa.Super. filed 2/6/23) (unpublished memorandum) (footnotes omitted).

On direct appeal, Appellant presented challenges to the weight of the evidence, the sufficiency of the evidence, and the discretionary aspects of his sentence. Finding no merit to his claims, a panel of this Court affirmed Appellant's judgment of sentence on February 6, 2023. ***See id.*** Appellant filed a petition for allowance of appeal, which our Supreme Court denied on July 5, 2023.

On or about October 18, 2023, Appellant filed a timely, *pro se* PCRA petition, and the PCRA court appointed Walter C. Chisholm, Esquire, to represent Appellant. On December 28, 2024, Attorney Chisholm filed a ***Turner/Finley***[1] "no-merit" letter and a petition to withdraw his representation. On December 30, 2024, the PCRA court gave notice of its intent to dismiss Appellant's PCRA petition pursuant to Pa.R.Crim.P. 907. Appellant did not file a response.

The PCRA court granted PCRA counsel's petition to withdraw and formally dismissed Appellant's PCRA petition. Appellant filed a timely, *pro se* notice of appeal. On February 26, 2025, the PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant timely complied. The PCRA

---

[1] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

- 3 -

court filed a responsive Rule 1925(a) opinion on March 24, 2025. Appellant filed a motion to supplement his Rule 1925(b) statement to raise issues of PCRA counsel's ineffectiveness, and on March 27, 2025, the PCRA court granted Appellant's request to file a supplemental Rule 1925(b) statement. On April 6, 2025, Appellant filed a supplemental Rule 1925(b) statement raising claims of PCRA counsel's ineffectiveness.

On March 27, 2025, Appellant filed a *pro se* "Application to Compel" in this Court. Therein, Appellant averred that, despite his repeated requests, trial counsel failed to provide Appellant with his case file, including trial transcripts. Further, on April 2, 2025, Appellant filed a *pro se* "Application for Relief" in this Court seeking permission to file a supplemental Pa.R.A.P. 1925(b) statement *nunc pro tunc*. By order entered on April 11, 2025, this Court directed the PCRA court to ensure that Appellant received all transcripts and other relevant documents. Moreover, by order entered on April 14, 2025, this Court denied Appellant's request to supplement his Rule 1925(b) statement; however, we noted Appellant could file a request to supplement his statement with the PCRA court.

On April 15, 2025, Appellant filed a *pro se* "Application for Remand" in this Court. Therein, Appellant indicated he planned to raise issues of PCRA counsel's ineffectiveness on appeal, and, consequently, he requested a remand to the PCRA court for the appointment of new counsel and/or an evidentiary hearing on his claims of PCRA counsel's ineffectiveness. By order

entered on May 2, 2025, this Court denied Appellant's "Application for Remand" and informed Appellant he could file a request for the appointment of new counsel with the PCRA court.

On May 25, 2025, Appellant simultaneously filed a *pro se* request to further supplement his Rule 1925(b) statement *nunc pro tunc*, as well as a supplemental Rule 1925(b) statement, in the PCRA court. On June 5, 2025, the PCRA court appointed new counsel, Stephen O'Hanlon, Esquire, to represent Appellant on appeal, and on July 25, 2025, Attorney O'Hanlon filed a supplemental Rule 1925(b) statement on behalf of Appellant. On August 8, 2025, the PCRA court filed a supplemental Rule 1925(a) opinion.

On August 22, 2025, Appellant filed a *pro se* "Application for Relief" in this Court seeking the removal of Attorney O'Hanlon. Specifically, Appellant averred that, although he asked this Court to appoint him new counsel, he never asked the PCRA court to appoint him new counsel. Consequently, he sought the dismissal of new counsel (Attorney O'Hanlon) so that he could file a *pro se* appellate brief. On October 2, 2025, this Court granted Appellant's request for the removal of Attorney O'Hanlon.

On appeal, Appellant presents the following issues in his "Statement of the Questions Presented" (verbatim):

1. PCRA counsel and PCRA appeal counsel were ineffective for failing to raise direct appeal counsel's ineffectiveness for failing to raise on direct appeal that the trial court erred by failing to grant a mistrial. Where the trial court excused two jurors leaving only eleven jurors to legitimately serve on the juror, [Appellant's] refusal to proceed to trial with only eleven jurors,

- 5 -

trial counsel informed the trial court to declare a mistrial, and the trial was actually aborted when the jurors were excused, but instead the trial court continued the trial to return the two excused jurors after they had been discharged from the panel.

2. PCRA counsel and PCRA appeal counsel were ineffective for failing to raise trial counsel's ineffectiveness for failing to object to the trial court continuing [Appellant's] trial, right in the middle, to return two discharged jurors.

3. The trial court erred in denying [Appellant's] motion to suppress [Appellant's] inculpatory statement regarding flight because [Appellant] gave a statement without **Miranda** warnings, and direct appeal and PCRA counsel were ineffective for failing to raise this issue leading to [Appellant] suffering prejudice because the jury was informed of consciousness of guilt and other crimes. N.T., 8/31/21, at 16, 19, 22, 26.

4. PCRA counsel and PCRA appeal counsel were ineffective for failing to raise trial counsel's ineffectiveness for failing to call Ashaun Harding to discredit the testimony of Shakeyma Hunlay, who testified that Ashaun was in the video of the shooting and identified [Appellant] as the shooter in the video by their beards, stance, and dress, in lieu of advising [Appellant] to take the stand to incriminate himself by testifying that he was the shooter.

5. PCRA counsel and PCRA appeal counsel were ineffective for failing to raise the cumulative effect of errors at [Appellant's] trial, that so undermined the verdict as to constitute a denial of his constitutional right to due process, effective counsel, and a fair trial.

Appellant's *Pro Se* Brief at 1-2.

Initially, we note that, when reviewing the dismissal of a PCRA petition, we examine "whether the PCRA court's conclusions are supported by the record and free from legal error." **Commonwealth v. Johnson**, 289 A.3d 959, 979 (Pa. 2023) (citation omitted).

The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. This Court grants great deference to the findings of the PCRA court, and we will not

disturb those findings merely because the record could support a contrary holding. In contrast, we review the PCRA court's legal conclusions *de novo*.

***Commonwealth v. Maxwell***, 232 A.3d 739, 744 (Pa.Super. 2020) (*en banc*) (citations omitted). A PCRA petitioner "has the burden of persuading [an appellate c]ourt that the PCRA court erred and that such error requires relief."

***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019).

Moreover, we note that, in Pennsylvania, counsel is presumed to have rendered effective assistance. ***Commonwealth v. Orlando***, 156 A.3d 1274, 1281 (Pa.Super. 2017). To overcome this presumption, a petitioner must plead and prove by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. ***Id***. Our Supreme Court has explained that:

> A chosen strategy will not be found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.
>
> Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability, but for counsel's error, the outcome of the proceedings would have been different.

***Commonwealth v. Cox***, 983 A.2d 666, 678 (Pa. 2009) (citations omitted). If a petitioner fails to satisfy any one of the three prongs, the claim fails. ***Orlando***, 156 A.3d at 1281. "Counsel will not be found ineffective for failing to raise a meritless claim." ***Commonwealth v. Brown***, 196 A.3d 130, 151 (Pa. 2018).

In the case *sub judice*, in each of his claims, Appellant presents challenges to the effectiveness of his PCRA counsel. In **Commonwealth v. Bradley**, 261 A.3d 381, 401 (Pa. 2021), our Supreme Court held "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Bradley**, **supra**, 261 A.3d at 401.[2] Accordingly, the question then is whether we must remand to the PCRA court for further proceedings or whether "the record before the appellate court [is] sufficient to allow for disposition of [the] newly-raised ineffectiveness claims." **Id.** at 402. As discussed *infra*, we conclude the record is sufficient to allow for disposition of the ineffectiveness claims.

_____

[2] We recognize that this Court clarified after **Bradley** that, when a petitioner represents himself on appeal after his counsel's withdrawal pursuant to **Turner/Finley**, the *pro se* petitioner must raise any PCRA counsel ineffectiveness claims in his court-ordered Rule 1925(b) statement or waive any such claims. **See Commonwealth v. Snyder**, 316 A.3d 178, 182 (Pa.Super. 2024).(holding that *pro se* petitioner failed to preserve PCRA counsel ineffectiveness claims when he did not include them in his court-ordered concise statement, "which would have been his first opportunity to raise his claims of PCRA counsel's ineffectiveness"). In the case *sub judice*, after the PCRA court granted Attorney Chisholm's application to withdraw pursuant to **Turner/Finley**, Appellant raised claims of Attorney Chisholm's ineffectiveness in his initial and supplemental *pro se* Rule 1925(b) statements. Moreover, to the extent Appellant challenges the effectiveness of Attorney O'Hanlon, who was appointed to assist Appellant on appeal and filed a counseled Rule 1925(b) statement, we note Appellant was permitted to raise claims related to his ineffectiveness on appeal for the first time. **See Bradley**, **supra**. In sum, in light of **Bradley**, and its progeny, we conclude Appellant has not waived his claims of ineffective assistance of PCRA counsel or PCRA appellate counsel.

To obtain relief on a layered claim of ineffectiveness,

[an] appellant must plead and prove that: (1) trial counsel [and/or direct appeal counsel] was ineffective for a certain action or failure to act; and (2) [PCRA] counsel was ineffective for failing to raise [prior] counsel's ineffectiveness. As to each relevant layer of representation, appellant must meet all three prongs of the *Pierce*[3] test for ineffectiveness. A failure to satisfy any of the three prongs of the *Pierce* test requires rejection of a claim of ineffective assistance of trial counsel [and/or direct appeal counsel], which, in turn, requires rejection of a layered claim of ineffective assistance of [PCRA] counsel.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011).

Appellant's first and second ineffectiveness claims are related. Specifically, in his first issue, Appellant contends that, when Juror No. 6 and Juror No. 8 became unavailable on September 7, 2021, thus reducing the number of jurors to eleven, the trial court should have granted trial counsel's request for a mistrial. Appellant's Brief at 19. Appellant contends that Juror No. 6 and Juror No. 8 were "formally discharged" from jury service, thus requiring a mistrial on September 7, 2021. Appellant notes the trial court asked Appellant if he would proceed with eleven jurors on September 7, 2021, and Appellant refused to do so. *Id.* at 17. Appellant contends trial counsel "requested a mistrial" on September 7, 2021, and the trial court erred in denying the request. *Id.* Accordingly, Appellant alleges direct appeal counsel was ineffective in failing to raise the issue of the trial court's error, and both

---

[3] *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987).

PCRA counsel were ineffective in failing to raise the issue of direct appeal counsel's ineffectiveness.

Moreover, in his second issue, Appellant notes that, instead of declaring a mistrial on September 7, 2021, the trial court continued the trial until September 16, 2021, at which time a full complement of twelve jurors was available. Appellant contends that trial counsel should have objected to the delay and requested a mistrial on September 16, 2021, and all subsequent counsel were ineffective in failing to raise the issue of trial counsel's ineffectiveness.

> Pennsylvania Rule of Criminal Procedure 641 provides:
>
> In all cases, at any time after a jury of twelve is initially sworn and before verdict, the defendant and the attorney for the Commonwealth, with approval of the judge, may agree to a jury of fewer than twelve but not fewer than six. Such agreement shall be made a part of the record. The verdict in such a case shall have the same force and effect as a verdict by a jury of twelve.

Pa.R.Crim.P. 641.

As Rule 641 provides, the defendant "may agree to a jury of fewer than twelve;" however, he is not required to do so and may exercise his constitutional right to a verdict rendered by the 12-person jury. *See id.*; Const. Article 1, § 6. Further, this Court has held that "after the dismissal of a juror over objection, if the defendant and his counsel still believe the juror was improperly discharged, the defendant may refuse to proceed with less than twelve and thereby require the court to formally declare the mistrial." *Commonwealth v. Stewart*, 448 A.2d 598, 599 (Pa.Super. 1982).

Relevantly, in addressing Appellant's issues, the PCRA court indicated as follows:

> This trial began on August 30, 2021, and the jury heard testimony on August 31st and September 1st. However, the Philadelphia courts were unexpectedly closed for the remainder of the week due to a storm, and previously scheduled to be closed on Monday, September 6th for Labor Day. On September 7th, the court reconvened, and the court had previously excused one juror (Juror No. 6) to go on a previously scheduled vacation to Cancun, [thus leaving twelve jurors in place]. [However, on September 7th,] another juror (Juror No. 8) [reported to the trial court judge that she] had been exposed to COVID[.] [The trial court advised her] to stay home until her COVID test results were available. The court and counsel went on record to discuss how they would like to proceed, and it was ultimately decided to attempt to resolve the scheduled conflicts that had arisen. Court staff determined that the jurors were all available to come back for the remainder of the trial on September 16th, and scheduled the trial to resume on that date, with the [trial] judge coming in during his scheduled vacation to finish this trial.
>
> ***
>
> What occurred on September 7, 2021, is as follows:
>
> THE COURT: We're on the record. We're waiting for the defendant to come up. In the meantime, Thursday and Friday the city closed the court buildings. On Thursday, I talked to Juror No. 6, and he had a paid vacation to Cancun beginning last Saturday. I excused him. This morning, we had a phone call from Juror No. 8, who told me that she was in contact with a person who tested positive for COVID on Saturday, and I asked her to stay home.
>
> With that, I'm going to bring up the defendant so you can talk to the defendant to see if he wishes to proceed with less than 12 jurors. Commonwealth, that's also your decision as well.
>
> [ADA]: Yes, Your Honor.
>
> [TRIAL COUNSEL]: Yes, sir.
>
> THE COURT: Thank you.
>
> (A brief recess was taken at this time.)

- 11 -

THE COURT: We're back on the record. The first day I have available to try a week is June 6th of next year. I got June 6th, July 5th, July 18th, and July 25th.

[TRIAL COUNSEL]: So, it is your intention to call a mistrial now? Wouldn't you want to see if the lady tests positive?

THE COURT: You're going to make me come back?

[TRIAL COUNSEL]: Oh, right. It's your vacation. Then you can declare a mistrial.

THE COURT: See if he objects. If he objects, I'll have to come back.

[TRIAL COUNSEL]: He does want his 12. We'll talk to him.

THE COURT: You can talk. I'll step outside. Do you want time to talk to him for a minute?

[TRIAL COUNSEL]: Yes, just a minute.

THE COURT: All right. We're back on the record. Counsel, as I've told you, we're down to 11 jurors. Defense, what's your position?

[TRIAL COUNSEL]: Yes, Your Honor. I've conferred with [Appellant] about that and the prospect of going with 11 jurors, and [Appellant] agrees that he wants to have his full complement of 12 jurors.

THE COURT: Commonwealth.

[ADA]: Your Honor, I understand that one of the jurors was exposed to COVID over the weekend. Just for purposes of—we would ask that—instead of having a mistrial and going through this again, putting the family through this again, Your Honor, who is here in the court, I would ask that we be able to wait for the test results. But, I know it's up to Your Honor.

THE COURT: Let me see counsel for a second.

(Discussion held at sidebar off the record.)

THE COURT: We're back on the record. The court officers talked with all the jurors, except No. 8, and September 16th, they are all available. As it

- 12 -

stands now, we will come back on the 16th, and I will charge the jury and they will go deliberate. I will be in touch with Juror No. 8 personally. I will find out if they're getting tested tomorrow, when the test results are back. And I will report by email to all parties as to what we find out.

[TRIAL COUNSEL]: Thank you, Your Honor.

[ADA]: Thank you, Your Honor.

THE COURT: We're adjourned.

(N.T., 9/7/21, pp. 3-6).

On September 16th, the court resumed, and the following took place:

THE COURT: All right. We're back on the record out of the presence of the jury. I want to put some things on the record. The Thursday and Friday after the storm, the courts were closed. We were here the Tuesday after that. And Juror No. 8, I believe, was not here because she was exposed to somebody with COVID.

In the meantime, I sent the following to [Juror No. 6]: Dear [Juror No. 6], I hope you're enjoying your vacation. This is [the trial] judge in 507. I hate to intrude on your time in Cancun, but I thought I would advise you [of] the status of the trial where you were a juror. We are now reconvening on September 16th at 9:00 a.m. in Courtroom 507. I am hoping that is convenient for you. I also have to ask you, if you discussed this case with anyone, that's not a problem, as I told you to go to Mexico. It would, however, disqualify you from serving on the 16th. Please advise at your convenience. I gave him my cell phone number. Again, I apologize for interrupting your time off.

His response was: Hey, Good afternoon, Judge. Yes, that will be perfect, September 16th.

Also, I had conversations with Ms. Juror No. 8 on Friday. It said—[Juror No. 8] texted me: Hi, Judge. This is [Juror No. 8] sending you an update on my COVID status. My lab appointment was pushed back to this evening, so I'll notify you when the results are

available, two to five days. However, I did take the self-test kit earlier this weekend, and it tested negative. I'll keep you posted.

Thank you. We're reconvening on the 16th.

Then yesterday, last evening, I sent her: [Juror No. 8], how are you? Will you be able to be in court tomorrow morning?

Her answer was: Yes. My lab results came back today, and it was negative.

I said: Glad to hear that.

That's where we stand with the [2] jurors.

[TRIAL COUNSEL]: So, it sounds like we have a full 13 to work with today; is that correct?

THE COURT: Yes.

[TRIAL COUNSEL]: Your Honor, my request today is that, given the fact that it's been two weeks that we were adjourned, I know the temptations are out there, and I also know jurors are presumed to have followed your directions, but in an abundance of caution my request is that we bring out each juror individually and *voir dire* them about whether or not they followed your admonishment not to discuss the case with anyone.

[ADA]: I have no objection.

THE COURT: We'll proceed to do that….After this, supposedly, we should be charging the jury and proceeding from there.

(N.T., 9/16/21, pp. 3-5.)

Each juror was questioned if they had abided by the court's instruction not to discuss the case with anyone, and all advised they had not discussed the case with anyone. The jury was then charged in the appropriate law. (N.T., 9/16/21, pp. 5-14).

\*\*\*

Here, a mistrial was clearly not warranted, as after some unforeseen delays, all parties worked to resolve the resulting scheduling conflicts. Additionally, the jurors were all questioned when the trial resumed to ensure that [Appellant's] rights to a fair trial were preserved. [All jurors were present during all phases of

the trial.]…[Appellant] has not offered a scintilla of alleged prejudice he suffered as a result of the continuance, and, accordingly, he is not entitled to any relief on this claim.

PCRA Court Opinion, filed 8/8/25, at 10-14.

We agree with the PCRA court that Appellant is not entitled to relief on his claim. Initially, contrary to Appellant's assertion, the trial court did not permanently formally discharge Juror No. 6 and Juror. No. 8. ***See Commonwealth v. Briggs***, 12 A.3d 291, 333 (Pa. 2011) (holding a juror is discharged when they are disqualified from serving on the jury). Regarding Juror No. 6, the trial court permitted him to take his vacation and then had him report when the trial reconvened. Regarding Juror No. 8, she was instructed to get a COVID test and return to jury service if she tested negative for COVID. Notably, after she tested negative for COVID, she returned to the jury. Still, Appellant had the constitutional right to not move forward with his trial on September 7, 2021, with less than twelve jurors.

As Appellant suggests, the record reveals Appellant exercised his right to twelve jurors, and, thus, on September 7, 2021, trial counsel informed the trial court that Appellant would not proceed with less than twelve jurors. However, contrary to Appellant's assertion, trial counsel did not request a mistrial at this time. In fact, the record reveals that, when the trial court initially announced that it was going to declare a mistrial since Appellant would not proceed with less than twelve jurors, trial counsel asked, "Wouldn't you want to see if [Juror No. 8] tests positive?" N.T., 9/7/21, at 4. When the trial

- 15 -

judge reminded trial counsel that the trial judge had a vacation planned, trial counsel indicated, "[T]hen, you can declare a mistrial." *Id.* However, the trial court then indicated that, if Appellant objected to less than twelve jurors, the trial judge would come back early from vacation so that a mistrial would not be needed. *Id.* Trial counsel agreed to the trial judge returning early from vacation. *Id.* Thus, on September 7, 2021, the trial court did not proceed against Appellant's wishes with less than twelve jurors; but rather, the trial court continued the trial until September 16, 2021, at which time a full jury was available.

Accordingly, Appellant is factually mistaken in asserting that trial counsel requested a mistrial on September 7, 2021. That is, trial counsel did not preserve the issue of whether the trial court erred in failing to grant a mistrial on September 7, 2021. *See Commonwealth v. McAndrews*, 430 A.2d 1165 (Pa. 1981) (holding a defendant who fails to make a timely request for a mistrial waives a claim that the trial court should have declared a mistrial). Consequently, direct appeal counsel cannot be ineffective for failing to raise an unpreserved claim on appeal, and Appellant's layered claim of ineffectiveness fails. *Brown*, *supra*, 196 A.3d at 151("Counsel will not be found ineffective for failing to raise a meritless claim.").

In any event, as Appellant argues, there was then a nine-day delay until the jury reconvened with a full complement of jurors on September 16, 2021, without trial counsel lodging an objection. Appellant contends trial counsel

was ineffective in failing to object to the delay, and all subsequent counsel were ineffective in failing to challenge trial counsel's omission. We agree with the PCRA court that Appellant has failed to demonstrate he was prejudiced by trial counsel's omission. That is, he has failed to demonstrate that "there is a reasonable probability, but for counsel's error, the outcome of the proceedings would have been different." *Cox*, *supra*, 983 A.2d at 678.

In arguing he was prejudiced, Appellant summarily claims that, had the issue been raised properly at each stage, there is a reasonable probability the appellate Court would have found the trial court erred. It is well-settled that boilerplate allegations and bald assertions of ensuing prejudice cannot satisfy a defendant's burden to prove that counsel was ineffective. *See Chmiel*, *supra*. Simply put, Appellant has not demonstrated how the nine-day delay prejudiced him such that the outcome of his proceedings would have been different. *Cox*, *supra*.

The record reveals the trial court honored Appellant's request to proceed to verdict with a 12-person jury, and out of an abundance of caution, when the trial reconvened nine-days later, the trial court individually asked each juror in open court the following question: "During the time we're off, were you able to abide by my instruction not to discuss the case with anybody?" N.T., 9/16/21, at 5-14. Each juror answered, "Yes." *Id.* Thus, since Appellant has not demonstrated he was prejudiced by trial counsel's failure to request a mistrial due to the delay, Appellant's claim of ineffective assistance of trial

counsel fails, and, accordingly, his layered claims of ineffectiveness fail, as well.

In his third issue, Appellant alleges direct appeal counsel was ineffective in failing to challenge the trial court's denial of his motion to suppress statements he made to the police, and all subsequent counsel were ineffective in failing to raise the issue of direct appeal counsel's ineffectiveness. In this vein, Appellant claims he made inculpatory statements while he was subject to custodial interrogation without receiving his *Miranda*[4] warnings, and, thus, the trial court erred in denying his suppression motion.

Specifically, he avers his statement to the police that "he's been on the run and [the police] are lucky that [they] got him that day or [they] probably weren't going to get him because he's been out of state[,]" should have been suppressed under *Miranda*. *See* Appellant's Brief at 27. He notes he was prejudiced by the admission of the statement because the trial court charged the jury with a consciousness of guilt instruction due to his flight or concealment. *See id.* at 28. For the reasons discussed *infra*, we find there is no arguable merit to the underlying claim, and consequently, neither direct appeal counsel nor subsequent counsel may be deemed ineffective on this basis.

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In reviewing the denial of a suppression motion, our standard of review "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). While we defer to the court's factual determinations when supported by the record, "we are not bound by the suppression court's legal rulings, which we review *de novo.*" *Briggs*, *supra*, 12 A.3d at 320-21. Our scope of review is limited to "the evidence presented at the suppression hearing." *Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa.Super. 2019). We "consider only the Commonwealth's evidence and so much of the defense's evidence as remains uncontradicted when read in the context of the suppression hearing record as a whole." *Commonwealth v. Turpin*, 216 A.3d 1055, 1060 (Pa. 2019) (citation and internal quotation marks omitted).

Our Supreme Court has held that *Miranda* rights are only required prior to a custodial interrogation. *Commonwealth v. Housman*, 986 A.2d 822, 839 (Pa. 2009). In *In re V.H.*, 788 A.2d 976 (Pa.Super. 2001), a custodial interrogation and the need for *Miranda* warnings were explained in the following fashion:

> It is well-settled that the police are only required to advise a person of his *Miranda* rights if that person is subjected to custodial interrogation. The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

- 19 -

*Id.* at 980.

"Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." ***Commonwealth v. Gonzalez***, 979 A.2d 879, 887 (Pa.Super. 2009). In that regard, not every statement made by an individual during a police encounter constitutes an interrogation. ***Commonwealth v. Williams***, 941 A.2d 14, 30 (Pa.Super. 2008) (*en banc*). Additionally, volunteered or spontaneous utterances by an individual are admissible without the administration of ***Miranda*** warnings. ***Id.*** "When a defendant gives a statement without police interrogation, we consider the statement to be 'volunteered' and not subject to suppression. Interrogation is police conduct 'calculated to, expected to, or likely to evoke admission.'" ***Commonwealth v. Schwing***, 964 A.2d 8, 12 (Pa.Super. 2008).

In the case *sub judice*, trial counsel sought the suppression of Appellant's statement on the basis he was subject to custodial interrogation by the police without being provided with his ***Miranda*** warnings. Accordingly, on August 31, 2021, the trial court held a suppression hearing at which Officer Shawn Bossert testified. Specifically, Officer Bossert testified he and his partner were working on September 8, 2019, from 4:00 p.m. to 12:00 a.m. N.T., 8/31/21, at 12. They were in uniform and traveling in a police vehicle. ***Id.***

During their tour, Officer Bossert heard on the police radio that a "robbery was in progress [at 2*5] West Duncannon." *Id.* He then heard on the radio that the police were pursuing the robber's getaway vehicle, and the chase was headed in the direction where Officer Bossert and his partner were located. *Id.* at 13. Officer Bossert activated the police cruiser's lights and sirens, and he then heard on the police radio that the getaway vehicle had crashed with a pedestrian vehicle. *Id.* The police radio broadcasted that a "black male bailed from the [getaway] vehicle and was running southbound towards the 4000 block of Nice Street." *Id.*

Officer Bossert and his partner drove directly to the location, which consisted of row homes with backyards. *Id.* Officer Bossert, along with several other responding police officers, went to the rear of the row homes, and Officer Bossert saw a "black male stick his head up out of some heavy brush area in a yard." *Id.* at 14. The officers approached the male with the aim of detaining him, and the male punched Officer Bossert in the face. *Id.* After a brief struggle, the male, later identified as Appellant, was detained and placed in the back of a police vehicle. *Id.* at 14-15.

Officer Bossert testified that, after Appellant was placed in the police vehicle: "[M]y partner was in the middle of asking [Appellant] what his name was, [and] he made a statement that he's been on the run and we're lucky that we got him that day or we probably weren't going to get him because he's been out of state." *Id.* at 16. Officer Bossert clarified that, prior to

Appellant making the statement about "being on the run," the only question asked of him by the police was his name. *Id.* at 16-17. Officer Bossert testified that, after Appellant gave his name, his partner ran him through the system, which resulted in a positive hit for an active warrant for homicide. *Id.* at 14.

On cross-examination, Officer Bossert confirmed that, after Appellant punched him, he did not say anything to Appellant or question him. *Id.* at 18. Rather, Appellant was handcuffed and led directly to the police cruiser, at which time Officer Bossert's partner sat in the front seat of the police cruiser and asked Appellant his name. *Id.* at 19. Officer Bossert reiterated that, prior to Appellant making his statement about "being on the run," the only question the police asked Appellant was his name. *Id.* at 20. Officer Bossert confirmed Appellant was not given his *Miranda* warnings prior to Officer Bossert's partner asking Appellant his name. *Id.* at 22.

In addressing Appellant's suppression issue, the court reasoned that, based on the testimony of Officer Bossert, the sole witness at the suppression hearing, Appellant was in police custody when he made his inculpatory statement. PCRA Court Opinion, filed 8/8/25, at 5. However, the court further reasoned that Appellant "was not being interrogated by the officer when he announced to the officers [that he had been on the run]." *Id.* Rather, the court held "the record established that [Appellant] voluntarily gave this statement without any coercion or conduct by the police officers to elicit the

- 22 -

statement," and since "*Miranda* does not preclude the admission of spontaneous utterances," the court properly denied the suppression motion. *Id.* (quotation marks and quotation omitted). We agree with the court's sound reasoning.

Simply put, this Court has held that "not every statement made by an individual during a police encounter constitutes an interrogation." *Commonwealth v. Garvin*, 50 A.3d 694, 698 (Pa.Super. 2012) (citation omitted). "When a defendant gives a statement without police interrogation, we consider the statement to be 'volunteered' and not subject to suppression....Interrogation is police conduct 'calculated to, expected to, or likely to evoke admission.'" *Id.* (citations omitted).

Moreover, a statement made in a custodial setting will not be suppressed where the suspect spontaneously "blurts out" the statement, or makes an incriminating statement in the course of "small talk" with authorities, or is merely responding to biographical questioning. *See Commonwealth v. Page*, 59 A.3d 1118 (Pa.Super. 2013). "Generally speaking, general information such as name, height, weight, residence, occupation, etc. is not the kind of information which requires *Miranda* warnings since it is not information generally considered as part of an interrogation." *Garvin*, 50 A.3d at 698 (quotation marks and quotation omitted).

Accordingly, in the case *sub judice*, we conclude the police officer's question seeking to elicit Appellant's name was not an "interrogation," and, thus, the court properly determined that Appellant's statement in response to the question, *i.e.*, that he "had been on the run," was a spontaneous utterance. Accordingly, since the police were seeking biographical information when Appellant "blurted out" his statement, there was no requirement that Appellant be advised of his **Miranda** warnings. **See Page**, **supra**.

Consequently, there is no arguable merit to Appellant's underlying suppression claim. Thus, Appellant's claim of ineffective assistance of direct appeal counsel fails, and, accordingly, his layered claims of ineffectiveness fail, as well. **See Brown**, **supra**, 196 A.3d at 151 ("Counsel will not be found ineffective for failing to raise a meritless claim.").

In his fourth issue, Appellant claims trial counsel was ineffective in failing to call Ashaun Harding to discredit the identification testimony of Shakeyma Hunlay. Ms. Hunlay testified she was watching the local news on television when a video of the instant shooting was played. N.T., 8/31/21, at 128-30. She testified that she recognized two of her brothers in the video; namely, Ashaun Harding and Appellant. **Id.** at 132. She identified Appellant as the man shooting a gun in the video. **Id.** Ms. Hunlay confirmed she gave a pre-trial statement to the police identifying her brothers in the video. **Id.** at 133.

Appellant claims that, had trial counsel called Ashaun, he would have testified that neither he nor Appellant were in the video, thus discrediting Ms. Hunlay's testimony. Accordingly, Appellant claims trial counsel was ineffective in failing to call Ashaun to testify, and all subsequent counsel were ineffective in failing to raise the issue of trial counsel's ineffectiveness.

Relevantly, our Supreme Court has held as follows:

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the **Strickland**[5] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. To demonstrate **Strickland** prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." **Commonwealth v. Gibson**, 951 A.2d 1110, 1134 (Pa. 2008). Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense.

**Commonwealth v. Sneed**, 45 A.3d 1096, 1108–09 (Pa. 2012) (citations omitted) (footnote added).

Here, we conclude Appellant has failed to demonstrate how the absence of Ashaun's testimony was so prejudicial as to have denied him a fair trial. **See id.** At trial, Appellant testified in his own defense. Specifically, Appellant admitted he was the shooter, but he asserted a claim of self-defense. N.T.,

---

[5] **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

9/1/21, at 69-74. That is, he claimed he shot the victim because he believed the victim had a gun and was going to shoot him and his friends. *Id.* at 73.

As indicated, Appellant now claims that trial counsel should have called Ashaun to testify that neither he nor Appellant were in the video or otherwise at the scene, thus discrediting Ms. Hunlay's testimony identifying Appellant in the video as the shooter. However, given Appellant's testimony and self-defense strategy, Appellant has failed to demonstrate how Ashaun's testimony would have been beneficial under the circumstances. *See Commonwealth v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005). That is, Ashaun's proposed testimony would have been inconsistent with Appellant's asserted defense at trial. *See id* ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense.").

Accordingly, Appellant has failed to demonstrate trial counsel was ineffective in failing to call Ashaun to testify, and consequently, Appellant's layered claims of ineffectiveness fail, as well.[6] *Chmiel*, *supra*, 30 A.3d at 1128.

---

[6] Moreover, we note that, after the Commonwealth rested, the trial court conducted a colloquy of Appellant outside of the jury's presence. During this colloquy, the trial court specifically asked Appellant the following question: "Are there other witnesses you have wished to present?" N.T., 9/1/21, at 64. Appellant specifically answered, "No." *Id.* Further, the trial court asked
*(Footnote Continued Next Page)*

Moreover, we note Appellant contends trial counsel was ineffective "for calling him to testify because he incriminated himself." Appellant's Brief at 12. He claims counsel's advice that he should testify was so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf. He further contends all subsequent counsel were ineffective for failing to raise the issue of trial counsel's ineffectiveness.

Our Supreme Court has observed that "[t]he right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution." *Commonwealth v. Nieves*, 746 A.2d 1102, 1105 (Pa. 2000). Thus,

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Nieves*, *supra*, 746 A.2d at 1104 (citations omitted).

_____

Appellant: "And you're satisfied the attorneys have done the investigations necessary for this, correct?" *Id.* Appellant answered, "Yes." *Id.* Appellant is bound by his statements, which he made in open court while under oath. *See Commonwealth v. Pier*, 182 A.3d 476, 480 (Pa.Super. 2018) (holding a defendant is bound by his statements made in open court while under oath).

Here, prior to Appellant testifying, the trial court conducted the following colloquy:

> THE COURT: [Appellant], I got some of the same questions as yesterday. How are you?
>
> [APPELLANT]: Good.
>
> THE COURT: You know you're here for your trial?
>
> [APPELLANT]: Yes.
>
> THE COURT: And the Commonwealth has rested. Do you understand that?
>
> [APPELLANT]: Yes.
>
> THE COURT: Are you under the influence of drugs or alcohol?
>
> [APPELLANT]: No.
>
> THE COURT: Now is the determination of whether or not you wish—two things, whether or not you wish to take the stand in your own defense and whether or not you have any other witnesses you wish to present.
>
> Now, the first thing is whether or not you want to take the stand in your own defense. You have a right under both Constitutions, Pennsylvania and United States, to take the stand in your own defense if you want to do so. You also have a right not to take the stand in your own defense if you wish to do so. If you do not testify, I will instruct the jury, if you want, that they cannot take any adverse inference because you failed to testify.
>
> Do you understand those principles?
>
> [APPELLANT]: Yes.
>
> THE COURT: Have you had a chance to talk to your attorney about this?
>
> [APPELLANT]: Yes.
>
> THE COURT: And you're satisfied with their representation up until this point?
>
> [APPELLANT]: Yes.
>
> THE COURT: All right. The determination on whether or not you take the stand, you should listen to what your attorneys have to say, because they're both very experienced and good lawyers.

But the decision is not theirs. The decision is yours and yours alone.

Do you understand that?

[APPELLANT]: Yes.

THE COURT: Have you had enough time to talk with your attorneys concerning whether or not you wish to take the stand in your own defense?

[APPELLANT]: Yes.

THE COURT: Have you made a decision?

[APPELLANT]: Yes, I did.

THE COURT: What's that decision?

[APPELLANT]: I want to testify.

THE COURT: You're going to testify?

[APPELLANT]: Yes.

N.T., 9/1/21, at 61-64.

As is evident, the trial court conducted a thorough oral colloquy with Appellant regarding his right to testify, and Appellant acknowledged that the right to testify or not to testify was his decision alone. ***See id.*** Based on the record, Appellant's decision to testify was knowing, voluntary, and intelligent. Accordingly, Appellant is not entitled to relief on his claim of ineffective assistance of trial counsel. ***See Commonwealth v. Lawson***, 762 A.2d 753 (Pa.Super. 2000) (holding that a defendant who makes a knowing, voluntary, intelligent decision regarding his right to testify may not later claim ineffective assistance of counsel for his own decision). Thus, his layered claims of ineffective assistance of subsequent counsel fail, as well.

In his final issue, Appellant claims that cumulative errors denied him due process. Our Supreme Court has held that "[w]here a claimant has failed to prove prejudice as the result of any individual errors, he cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulation requires a different analysis." **Commonwealth v. Hutchinson**, 25 A.3d 277, 318–19 (Pa. 2011) (citations omitted). **See Commonwealth v. Small**, 980 A.2d 549, 579 (Pa. 2009) (concluding that a broad and vague claim of the prejudicial effect of cumulative errors did not entitle the appellant to relief).

Although cumulative prejudice from individual claims may be properly assessed in the aggregate when the individual claims have failed due to lack of prejudice, nothing in our precedent relieves an appellant who claims cumulative prejudice from setting forth a specific, reasoned, and legally and factually supported argument for the claim. **See Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009) (citation omitted). Here, Appellant presents a bald averment of cumulative prejudice, and, thus, he is not entitled to relief. **See Hutchinson**, **supra**.

For all of the foregoing reasons, we conclude Appellant is not entitled to relief. Thus, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/22/2026